*Exhibit "A"*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

OXEBRIDGE QUALITY RESOURCES
INTERNATIONAL, LLC, and
CHRISTOPHER PARIS, individually,

_____

*Plaintiff(s)*

v.

MARC TIMOTHY SMITH, individually,
and d/b/a CAYMAN BUSINESS SYSTEMS,

_____

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

*Civil Case
Federal Court*

Civil Action No. 8:15CV0011-EAK-TB

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Marc Timothy Smith
8466 LeSourdsville-West Chester Road
Olde West Chester, Ohio 45069-1929

*Received
26 JAN 2015*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill Wohlsifer, Esquire
William R. Wohlsifer, P.A.
1100 E. Park Ave, Ste B
Tallahassee, FL 32304

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: ___JAN 9 2015___                          _____
                                                 *Signature of Clerk or Deputy Clerk*

Case 8:15-cv-00011-EAK-TBM Document 6-1 Filed 01/09/15 Page 2 of 2 PageID 88

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Middle District of Florida

| | | |
|---|---|---|
| OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS, individually, | ) ) ) | |
| *Plaintiff(s)* | ) ) | Civil Action No. |
| v. | ) | |
| MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, | ) ) ) | |
| *Defendant(s)* | ) ) | |

Duplicate

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Cayman Business Systems
8466 LeSourdsville-West Chester Road
Olde West Chester, Ohio 45069-1929

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill Wohlsifer, Esquire
William R. Wohlsifer, P.A.
1100 E. Park Ave, Ste B
Tallahassee, FL 32304

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____2;51_____        _____
                                                  *Signature of Clerk or Deputy Clerk*

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2015 JAN -5  PM 1:36

OXEBRIDGE QUALITY RESOURCES
INTERNATIONAL, LLC, and
CHRISTOPHER PARIS, individually,

      Plaintiffs,

CASE NO.: 8:15 CV 11 T17 TBM.

vs.

MARC TIMOTHY SMITH, individually,
and d/b/a CAYMAN BUSINESS SYSTEMS,

      Defendants.

_____/

*I retired in 2001.*

## COMPLAINT FOR UNFAIR COMPETITION UNDER 15 U.S.C. 1125; VIOLATION OF §§ 772.102(1)(a)(26), 772.104(1) AND 836.05, FLORIDA STATUTES (EXTORTION); DEFAMATION *PER SE*; DEFAMATION; LIBEL; INJURIOUS FALSEHOOD; AND INJUNCTIVE RELIEF

COMES NOW the Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC ("OXEBRIDGE") and CHRISTOPHER PARIS ("PARIS") cumulatively ("Plaintiffs") by and through their undersigned attorney, and file this Complaint against Defendants, MARC TIMOTHY SMITH, individually ("SMITH") and d/b/a CAYMAN BUSINESS SYSTEMS ("CAYMAN") cumulatively ("Defendants"), for Unfair Competition under 15 U.S.C. 1125; Violation of §§ 772.102(1)(a)(26), 772.104(1) and 836.05, Florida Statutes (Extortion); Defamation; Defamation *Per Se*; Libel; Injurious Falsehood; and Injunctive Relief; and hereby states the following:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of interest, costs and attorney's fees.

TPA-2 7649          $400

2. At all times material, OXEBRIDGE was and is a for-profit limited liability company, organized under the laws of the State of Florida, with its principal place of business located at 1503 South US Highway 301, Tampa, FL 33619.

3. OXEBRIDGE has a single LLC member, to-wit: CHRISTOPHER PARIS, who is a citizen of the State of Florida, domiciled in Hillsborough County, Florida.

4. SMITH is a citizen of the State of Ohio and does business as CAYMAN BUSINESS SYSTEMS with its principal place of business being in the State of Ohio. *not Since 2001.*

5. Defendants have conducted and directly competed for business in the State of Florida. *NEVER* *(NO)*

6. Defendants have been providing "onsite" and "tailored" programs for twenty five years to businesses within the State of Florida including but not limited; Pall Aeropower *Training 1998* Corporation of New Port Richey, Pasco County, Florida and the Federal Warranty Service *Aug 2000* Corporation of Tampa, Florida, within this district. *iso9001 Imp.*

7. SMITH, by operating, conducting, engaging in, or carrying on a business venture in the State of Florida, SMITH availed himself and CAYMAN to the personal jurisdiction in the State of Florida, pursuant to section 48.193(1)(a), Florida Statutes.

8. SMITH availed himself to the personal jurisdiction of the State of Florida when he solicited consulting services of CAYMAN within the State, pursuant to section 48.193(1)(f)(1), *Not Since 2000 —* Florida Statutes .

9. SMITH, availed himself to personal jurisdiction in the State of Florida by engaging in substantial business activity within the state, pursuant to Section 48.193(2), Florida Statutes. *2 Jobs as noted above* *no — done*

10. The lion share of Plaintiffs' clientele and consulting business is in the aerospace industry. *I have never do aerospace* Plaintiffs' principal place of business is in the State of Florida. The "heart" of the aerospace *uso*

industry is in the State of Florida. Thus, the "brunt" of the harm to plaintiffs was and is felt in Florida. Panavision International, L.P. v. Toeppen, 141 F. 3d 1316 (9th Cir. 1998).

11. By commiting the tortious acts described in this Complaint, in the State of Florida, SMITH, subjected himself to personal jurisdiction in the State of Florida, pusuant to section 48.193(1)(b), Florida Statutes.

12. SMITH owns, operates and maintains Elsmar.com, which offers a free alternative to standards consulting services to potential paying clients, of which SMITH derives income. ~ us$ 70¢ per month net.

13. Many Florida businesses and individuals have requested and received assistance for industry standards in place of normally paid consulting services from Elsmar.com for example;
*I can give away free advice.*

a. Precision Resource – Florida Division, Inc. (Fort Lauderdale, FL)

b. Mike Laurie – Quality Manager, Injection molding of aerospace and medical components (Sarasota, FL)

c. Sun-Glo Plating Company, Inc. (Pinellas Park, FL)

d. Giselle – Quality Manager, Automotive and Manufacturing Industry

e. Virtual Imaging, Inc. (Boca Raton, FL)

f. Gooch & Housego (Orlando, FL)

*I have no idea who these people / companies are.*

14. Elsmar.com is not a passive website nor is it merely interactive, because it requires original input each and every time Elsmar.com and the requesting party engage in industry-specific consultation. Further, "premium file access" can be purchased where editable Master Data File Sets are transmitted to "premium members", some of which in the State of Florida.

*There is no consult... no consultations*

*us$ 195 — Sold less than 20 last year*

15. SMITH and CAYMAN's clients within the State of Florida use Elsmar.com to access training manuals and materials essential to Defendants' services.

*People share non-copyrighted forms and files*

*∅ in 2014*
*$50  3, 27 Sept 2012*
*$50  1. 12 June 2013*
*$25  2. 7 Apri "*

*I went thru 2014 and 2013. Not a single "Sale" tag...*

*No FL Business since 2000*

16. SMITH's actual interactions establish a physical presence within the State of Florida. The commercial quality and interaction with businesses and individuals within the State of Florida of Elsmar.com establish a "plus" factor to establish sufficient minimum contacts. *I have no FL contacts.* *Cf.* Roblor Mktg. Group, Inc. v. Gps Indus., Inc., 645 F. Supp. 2d 1130 (S.D. Fla. 2009)

17. This action seeks to collect an amount exceeding $75,000 and there is complete diversity between the parties; jurisdiction is proper under 28 U.S.C. §1332. *HA!*

18. This Court has original jurisdiction over Plaintiffs' Federal Unfair Competition Claim, pursuant to 28 U.S.C. § 1121, and supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. 1367.

## FACTUAL BACKGROUND

### a. The Parties Business Models

19. Both Plaintiffs and Defendants offer commercial consulting and training services in the ISO 9001 standard method for quality control. Therefore, Plaintiffs and Defendants are direct commercial competitors. *Not since 2001*

20. OXEBRIDGE has successfully implemented ISO 9001 quality control standards, including a 40-day implementation program, for many businesses, for many years.

21. SMITH operates the website www.elsmar.com ("Elsmar.com"), a public, prominently featured Internet forum that focuses on issues that impact the ISO 9001 quality control standard industry.

22. Elsmar.com includes a "solutions" page that is an advertisement for CAYMAN's consulting services. *OLD HTML page. So what? no business since 2000.*

23. OXEBRIDGE, through its website and other publications, reports on incidents within the ISO 9001 and quality management profession that can negatively impact. This occasionally includes negative reporting on organizations that may advertise on Elsmar.com.

**b. Knowingly Publishing False Material with Reckless Disregard for the Truth**

24. SMITH continuously updates postings linking to old defamatory posts that are damaging to the Plaintiffs to purposefully bring such older postings from cache to into current or real time.[1]

25. SMITH, despite knowing or with reckless disregard for the truth or falsity of such content, has continued on a malicious campaign for over fifteen (15) years of tortious interference, unfair competition, libel and defamation targeted against the Plaintiffs.

26. SMITH has the authority and duty to monitor the content posted on Elsmar.com.

27. SMITH, despite knowing or with reckless disregard for the truth or falsity of such content, has posted and refused to moderate numerous false statements including but not limited to:

   a. SMITH continues to refer to the OXEBRIDGE implementation method as "fraudulent" and "misleading;"

   b. SMITH has mischaracterized OXEBRIDGE's business model and its financial stability;

   c. SMITH has falsely claimed PARIS has threatened him;

   d. SMITH has falsely claimed PARIS has harassed him;

   e. SMITH has made false claims and personally published attacks against PARIS;

   f. SMITH has falsely accused OXEBRIDGE of deceptive advertising;

   g. Other posts too numerous to list; and

[1] See ¶¶ 29(c) and 32, *infra*.

h. Other posts that may occur after the drafting of this Complaint.

28. SMITH has mischaracterized OXEBRIDGE's business as one that "heavily depends upon
*— They do (he does)*
registrations for their existence." (A copy of this post is attached hereto as Exhibit "A.")

29. SMITH has falsely claimed PARIS has threatened him with vulgar and nasty phone calls.
(A copy of this post is attached hereto as Exhibit "B.") *He (Paris) has*

30. SMITH has mischaracterized PARIS as a "paranoid schizophrenic" and "needing
*honest*
psychiatric help." (A copy of this post is attached hereto as Exhibit "C.") *my opinion.*

31. SMITH has continually misrepresented the OXEBRIDGE business model as "failing." (A
*once I said it may be.*
copy of this post is attached hereto as Exhibit "D.") *Lots of people
are querying*

32. SMITH has continually, derogatorily, mischaracterized the OXEBRIDGE implementation

method as a "Wonder," sarcastically insinuating that it is too good to be true, thus
*never used the word*
fraudulent. (A copy of this post is attached hereto as Exhibit "E.")

33. SMITH, on the Internet, describes the OXEBRIDGE "method" of ISO 9001

implementation as "misleading" and "deceptive" because of its 40-day implementation
*I believe it is.*
period, while on multiple occasions SMITH has contrarily accepted the possibility of a 30-

day implementation period when performed by parties other than OXEBRIDGE. (A
*I never said that.*
composite of these posts are attached hereto as Exhibit "F.")

34. SMITH continues to describe and mark any post regarding OXEBRIDGE or PARIS as a
*Nope*
"fraud" or a "scam." While to the contrary, SMITH has admitted that he has no knowledge

of the OXEBRIDGE implementation system, stating he does not "follow Paris and his

company's scope of standards which they work with, so I don't really know what they're

into." (A copy of the post is attached hereto as Exhibit "G.")

### c. SMITH's Malicious Intent

35. SMITH has demonstrated his malicious intent toward Plaintiffs through multiple postings

and emails including but not limited to:

    a. "I honestly wanted to piss him [Paris] off and I told him why;" ✓

    b. "Essentially Chris Paris is a paranoid stalker;" ✓ *[handwritten: my belief.]*

    c. "It's all relative, anyway. Those posts [defaming Paris] are cached in lots of search

       engines. They're not going anywhere;" *[handwritten: Google which I have no control over.]*

    d. "This thread [defaming Paris] has served its purpose;" *[handwritten: Response to his looney email to me.]*

    e. "Chris Paris has a problem. You may not be able to see it but many others do;" *[handwritten: my opinion]*

    f. Other published malicious statements. *[handwritten: nope.]*

36. SMITH continues to use his control of Elsmar.com to selectively moderate the forum and

to defame and misrepresent OXBRIDGE for the purpose of steering potential clients away *[handwritten: How so?]*

from OXBRIDGE and PARIS, then to CAYMAN or other competitors.

37. SMITH, a as moderator of Elsmar.com, often cuts off discussion threads in support of

PARIS and OXEBRIDGE. *[handwritten: Cite one ...]*

*[handwritten left margin: This is what Wally really him has mad.]*

38. SMITH uses his knowledge of Google's search engine optimization to ensure that even old *[handwritten: — It I could do that I'd be rich]*

false publications remain in the top search results when searching for "OXEBRIDGE" on

Google.

39. SMITH, after PARIS created an account on Elsmar.com, locked his account and altered *[handwritten: Never happened.]*

PARIS' profile information. *[handwritten: Chris has had an account since around 2004 but]*

40. By locking PARIS' account SMITH prevented PARIS from posting to rebut the false *[handwritten: does not login]*

publications on Elsmar.com *[handwritten: He is free to do so now and has been since registering in 2004]*

41. SMITH's false and inconsistent publications are evidence of not only a reckless disregard for their truth or falsity, but also SMITH's malicious intent to disrupt or destroy OXEBRIDGE's business.

### d. Damage to Plaintiffs' Business Interests and Value

42. SMITH has used the Elsmar.com forum to deliberately harm and disrupt OXEBRIDGE's business activity by publishing and refusing to moderate known false and misleading statements.

   a. The Elsmar.com publications have directly resulted in PARIS being banned from other websites and Internet forums, therefore limiting OXEBRIDGE's Internet presence;

   b. By restricting PARIS' ability to respond to false publications, SMITH prevented PARIS from clearing OXEBRIDGE's name from false publications;

   c. Multiple potential clients have posted their unwillingness to do business with OXEBRIDGE as a result of the postings by SMITH. Further, an identified potential client not familiar with the Elsmar.com withdrew from a deal with OXEBRIDGE after discovering the false material published by SMITH. The value of that contract was $17,000;

   d. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered actual damages.

   e. PARIS' ordinary ability to participate in industry events and industry forums has been limited due to SMITH's defamatory publications;

   f. The false and misleading content has strained PARIS' relationships with industry professionals; and

g. SMITHS's false publications have directly and proximately interfered with OXEBRIDGE's ability to do business by limiting PARIS' ability to publish effective content that would otherwise reach OXEBRIDGE's targeted fee-based market.

*[handwritten: Give me a break!]*

## COUNT I
### 15 U.S.C. §1125 – Unfair Competition

*[handwritten: retired in 2001.]*

43. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

44. This is an action for damages arising from unfair competition in violation of 15 U.S.C. § 1125, brought by OXEBRIDGE and PARIS against SMITH and CAYMAN.

45. Elsmar.com (a Forum) advertises SMITH's ISO 9001 business services of CAYMAN BUSINESS SYSTEMS. Further, although the Forum's alleged purpose is to effectively provide ISO 9001 discussion at no charge to viewers, SMITH derives income from Elsmar.com and claims the valuation of CAYMAN BUSINESS SYSTEMS to be Two Million Two Hundred Thousand Dollars ($2,200,000).

*[handwritten: No, I offered to sell it to him for that]*
*[handwritten: Probably less than US$ 10 k]*
*[handwritten: I'd be lucky to sell it for US$ 500]*

46. Both SMITH, CAYMAN and Elsmar.com are direct competitors with the Plaintiffs.

*[handwritten: retired in 2001]*

47. SMITH's publishing of false and defamatory content on a supposedly neutral informational forum under the guise of "people helping people" is an improper means of competition.

48. SMITH's false postings and selective moderation of Elsmar.com has directly deceived and mislead present and potential future clients of OXEBRIDGE, away from OXBRIDGE and to CAYMAN and other competitors, damaging PARIS' good name in both his business *[handwritten: nope]* and personal communities, and the reputation of OXEBRIDGE's quality assurance business services.

49. OXEBRIDGE and PARIS have suffered and continue to suffer general and consequential damages as a result of the foregoing.

50. The acts alleged herein have caused Plaintiffs to retain the undersigned counsel and are obligated to pay a reasonable fee for his services.

51. Plaintiffs are entitled to recover fees under 15 U.S.C. § 1117. Defendants have acted in "bad faith" as SMITH engaged in economic coercion and provoked this suit, *John R. Thompson Co. v. Holloway*, 366 F. 2d 108 (5th Cir. 1966), as adopted by this circuit in *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F. 2d 1160 (11th Cir. 1982).

*I offered to sell him the website.*

**WHEREFORE,** Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS, demand judgment against defendants, MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, that:

   A. Finds SMITH to be in violation of 15 U.S.C. § 1117;

   B. Finds CAYMAN BUSINESS SYSTEMS to be in violation of 15 U.S.C. § 1117;

   C. Awards general damages to PARIS in an amount to be determined at trial;

   D. Awards general damages to OXEBRIDGE in an amount to be determined at trial;

   E. Awards consequential damages including but not limited to damages arising from PARIS' inability to conduct business, maintain relationships with current and prospective clients, and maintain professional relationships within the ISO industry as a result of the Defendants' conduct, in an amount to be determined at trial;

   F. Awards consequential damages including but not limited to damages arising from OXEBRIDGE's inability to conduct business, maintain relationships with

*Damages?*

current and prospective clients, and maintain professional relationships within the ISO industry as a result of the Defendants' conduct, in an amount to be determined at trial;

G.  Finds SMITH acted in bad faith;    ?

H.  Finds CAYMAN BUSINESS SYSTEMS acted in bad faith;

I.  Awards PARIS and OXEBRIDGE their reasonable attorneys' fees and costs incurred in this action under 15 U.S.C. § 1117; and

J.  Grants such other and further relief this Honorable Court deems equitable and just under the circumstances.

## COUNT II
### Violation of §§ 772.102(1)(a)(26), 772.104(1) and 836.05, Florida Statutes (Extortion)

52. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

53. This is an action for damages arising from extortion, brought by OXEBRIDGE and PARIS against SMITH and CAYMAN.

54. On May 2, 2014, in response to a written request to SMITH from OXEBRIDGE requesting the aforementioned false and defamatory content be removed, SMITH responded with an offer to sell Elsmar.com to PARIS for $450,000. *offer to sell it for whatever price I want.*

55. SMITH's intent is clear; if PARIS declines this purchase offer SMITH would continue to spread his defamatory campaign across the Internet. This is a form of extortion.

56. When PARIS did not purchase Elsmar.com, SMITH proceeded to spread false and defamatory content on Elsmar.com and other forums and outlets such as Twitter. *our Twitter post*

57. On May 3, 2012, SMITH raised the offer Elsmar.com to PARIS to $750,000. *I raised my price to him because he is an ass.*

58. On October 20, 2014, SMITH raised the offer for Elsmar.com's to PARIS to $2 million and then $2.2 million dollars. SMITH finally raised the sale price to $5 million. *The more he postered me, the*

59. Further, SMITH posted statements regarding the sale offers explaining his intent was to *higher the price.* punish PARIS with the offer of sale. "Knowing he wouldn't have the money, I did offer to sell Elsmar to him." (See copy of email attached hereto as Exhibit "H.")

60. In violation of Section 836.05, Florida Statues, SMITH maliciously injured PARIS' reputation by posting false, misleading and defamatory content with the intent to extort money from PARIS. *Paris was /is under no obligation to buy Elsmar.com*

61. PARIS seeks a civil remedy for extortion, pursuant to Section 772.104, Florida Statutes.

62. SMITH's acts of extortion have caused Plaintiffs to retain the undersigned counsel and are obligated to pay a reasonable fee for his services.

63. PARIS seeks threefold the actual damages or the minimum of $200 caused by SMITH's acts of extortion and reasonable attorney's fees and court costs, pursuant to Section 772.104, Florida Statutes.

64. OXEBRIDGE seeks threefold the actual damages or the minimum of $200 caused by SMITH's acts of extortion and reasonable attorney's fees and court costs, pursuant to Section 772.104, Florida Statutes.

**WHEREFORE,** Plaintiffs, **OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC,** and **CHRISTOPHER PARIS,** demand judgment against Defendants, **MARC TIMOTHY SMITH,** individually, and d/b/a **CAYMAN BUSINESS SYSTEMS,** that:

    A. Finds SMITH to be in violation of Section 836.05, Florida Statutes;

B. Finds CAYMAN BUSINESS SYSTEMS to be in violation of Section 836.05, Florida Statutes;

C. Finds PARIS and OXEBRIDGE entitled to civil remedies for criminal practices under Section 772.104(1), Florida Statutes.

D. Finds PARIS entitled to recovery of threefold the actual damages or the minimum of $200 under Section 772.104(1), Florida Statutes;

E. Finds OXEBRIDGE entitled to recovery of threefold the actual damages or the minimum of $200 under Section 772.104(1), Florida Statutes;

F. Awards attorney's fees and recoverable costs of litigation incurred in this action as a consequential damage; and

G. Grants such other and further relief this Honorable Court deems equitable and just under the circumstances.

## COUNT III
## Defamation *Per Se*

65. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

66. This is an action for damages arising from defamation *per se*, brought by OXEBRIDGE and PARIS against SMITH and CAYMAN. *opinions*

67. SMITH knowingly or with reckless disregard published false statements about PARIS' integrity and OXEBRIDGE's services offered.

68. SMITH acted with a reckless disregard when publishing comments relevant to OXEBRIDGE's services, as demonstrated by SMITH, admittedly not being familiar with OXBRIDGE's services. *only his 40 Day Wonder.*

69. SMITH's continuing defamation has falsely convinced others that both OXEBRIDGE and PARIS are frauds.

70. SMITH's false statements have directly impacted OXBRIDGE's ordinary ability to conduct business.

71. OXEBRIDGE and PARIS have suffered and continue to suffer general and consequential damages as a result of the foregoing.

72. The acts alleged herein have caused Plaintiffs to retain the undersigned counsel and are obligated to pay a reasonable fee for his services.

**WHEREFORE,** Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS, demand judgment against Defendants, MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, that:

   A. Finds SMITH liable to PARIS for the tort of defamation *per se*;

   B. Finds SMITH liable to OXEBRIDGE for the tort of defamation *per se*;

   C. Awards general damages to PARIS for injury to his good name in the community, in an amount to be determined at trial;

   D. Awards general damages to OXEBRIDGE for injury to its good name in the business community, in an amount to be determined at trial;

   E. Awards consequential damages including but not limited to damages arising from Plaintiffs' inability to conduct business, maintain relationships with current and prospective clients, maintain professional relationships within the ISO industry as a result of the Defendants' conduct, in an amount to be determined at trial;

F. Awards Future economic damages in the form of lost profits, opportunity losses, the diminution of value of OXEBRIDGE, and other damages, in an amount to be determined at trial;

G. Awards Attorney's fees and recoverable costs of litigation incurred in this action as a consequential damage; and

H. Grants such other and further relief this Honorable Court deems equitable and just under the circumstances.

## COUNT IV
## Defamation

73. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

74. In the alternative to Defamation *Per Se*, this is an action for damages arising from defamation, brought by OXEBRIDGE and PARIS against SMITH and CAYMAN.

75. Plaintiffs seek damages arising from defamation.

76. SMITH knowingly or with reckless disregard published false statements about PARIS' integrity and OXEBRIDGE's services offered.

77. SMITH acted with a reckless disregard when publishing comments relevant to OXEBRIDGE's services, as demonstrated by SMITH, admittedly not being familiar with OXBRIDGE's services.

78. SMITH's continuing defamation has falsely convinced others that both OXEBRIDGE and PARIS are frauds.

79. SMITH's false statements have directly impacted OXBRIDGE's ordinary ability to conduct business.

80. OXEBRIDGE and PARIS have suffered and continue to suffer general and consequential damages as a result of the foregoing.

**WHEREFORE,** Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS, demand judgment against Defendants, MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, that:

A. Finds SMITH liable to PARIS for the tort of defamation;

B. Finds SMITH liable to OXEBRIDGE for the tort of defamation;

C. Awards general damages to PARIS for injury to his good name in the community, in an amount to be determined at trial;

D. Awards general damages to OXEBRIDGE for injury to its good name in the business community, in an amount to be determined at trial;

E. Awards consequential damages including but not limited to damages arising from Plaintiffs' inability to conduct business, maintain relationships with current and prospective clients, maintain professional relationships within the ISO industry as a result of the Defendants' conduct, in an amount to be determined at trial;

F. Awards future economic damages in the form of lost profits, opportunity losses, the diminution of value of OXEBRIDGE, and other damages, in an amount to be determined at trial;

G. Awards attorney's fees and recoverable costs of litigation incurred in this action as a consequential damage; and

H. Grants such other and further relief this Honorable Court deems equitable and just under the circumstances.

## COUNT V
### Libel

81. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

82. This is an action for damages arising from libel, brought by OXEBRIDGE and PARIS against SMITH and CAYMAN.

83. SMITH's false statements intentionally misrepresent the value and manner of services offered by OXEBRIDGE to the detriment of PARIS and OXEBRIDGE.

84. SMITH has published and continues to publish libelous statements about PARIS and OXEBRIDGE on Internet blogs, forums and outlets such as Twitter, knowing the information was, and is false with a reckless disregard for the truth or falsity of such statements.

85. OXEBRIDGE and PARIS have suffered and continue to suffer general and consequential damages as a result of the foregoing.

**WHEREFORE,** Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS, demand judgment against Defendants, MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, that:

    A. Finds SMITH liable to PARIS for publishing libel;

    B. Finds SMITH liable to OXEBRIDGE for publishing libel;

    C. Awards general damages to PARIS for injury to his good name in the community, in an amount to be determined at trial;

    D. Awards general damages to OXEBRIDGE for injury to its good name in the business community, in an amount to be determined at trial;

    E. Awards consequential damages including but not limited to damages arising from Plaintiffs' inability to conduct business, maintain relationships with

current and prospective clients, maintain professional relationships within the ISO industry as a result of the Defendants' conduct, in an amount to be determined at trial;

F.  Awards future economic damages in the form of lost profits, opportunity losses, the diminution of value of OXEBRIDGE, and other damages, in an amount to be determined at trial;

G.  Awards attorney's fees and recoverable costs of litigation incurred in this action as a consequential damage; and

H.  Grants such other and further relief this Honorable Court deems equitable and just under the circumstances.

## COUNT VI
## Injurious Falsehood

86. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

87. This is an action for damages arising from injurious falsehood, brought by OXEBRIDGE and PARIS against SMITH and CAYMAN. *Opinions*

88. SMITH knowingly published and refused to moderate false and misleading content to the detriment of PARIS and OXEBRIDGE. *It's an internet forum*

89. SMITH's actions and statements demonstrate actual malice and intent to interfere with the personal interests of PARIS and business interests of OXBRIDGE.

90. In the alternative, if SMITH was unaware his statements were false, his malevolent purpose behind the published content accepts the risk of discovering whether the statements were false when made. Collier County Publishing Co. v. Chapman 318 So. 2d 492 (Fla. 2nd DCA 1975).

91. The false and misleading content on Elsmar.com has damaged Plaintiffs' ability to conduct business, maintain relationships with current and prospective clients and other professional relationships within the ISO industry.

92. OXEBRIDGE and PARIS have suffered and continue to suffer general and consequential damages as a result of the foregoing.

**WHEREFORE,** Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS, demand judgment against defendants, MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, that:

A. Finds SMITH liable to PARIS for creating or causing an Injurious Falsehood, with malice;

B. Finds SMITH liable to OXEBRIDGE for creating or causing an Injurious Falsehood, with malice;

C. Awards general damages to PARIS for injury to his good name in the community; in an amount to be determined at trial;

D. Awards general damages to OXEBRIDGE for injury to its good name in the business community, in an amount to be determined at trial;

E. Awards consequential damages including but not limited to damages arising from Plaintiffs' inability to conduct business, maintain relationships with current and prospective clients, maintain professional relationships within the ISO industry as a result of the Defendants' conduct, in an amount to be determined at trial;

*Redundant*

F. Awards future economic damages in the form of lost profits, opportunity losses, the diminution of value of OXEBRIDGE, and other damages, in an amount to be determined at trial;

G. Awards attorney's fees and recoverable costs of litigation incurred in this action as a consequential damage; and

H. Grants such other and further relief this Honorable Court deems equitable and just under the circumstances.

## COUNT VII
### Injunctive Relief (Temporary and Permanent)

93. Plaintiffs reallege and incorporate paragraphs 1-42 as if fully alleged in this count.

94. Plaintiffs will continue to suffer immediate and irreparable injury, in the form of lost business contracts if an injunction is not granted.

95. Once those contracts are lost it would be very difficult to impossible to repair said business relationships.

96. The Plaintiffs have no adequate remedy at law.

97. Since the statements are false and directly injurious to Plaintiffs' business contracts, Plaintiffs have a clear legal right to the requested relief. *opinions*

98. Defendants face no harm if enjoined, other than losing the ability to state false information about Plaintiffs' on Elsmar.com. *opinion*

99. A temporary and permanent injunction will serve the public interest, by preventing false statements about Plaintiffs being relied upon by the people and business that view Elsmar.com and other Internet forums and outlets. *None!*

**WHEREFORE,** Plaintiffs, OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC, and CHRISTOPHER PARIS request an order granting temporary and permanent injunctive relief against Defendants, MARC TIMOTHY SMITH, individually, and d/b/a CAYMAN BUSINESS SYSTEMS, that enjoins SMITH and CAYMAN:

    A. From directly or indirectly engaging in any of the libelous acts set forth in this Complaint;

    B. Awards removing existing publications from Elsmar.com;

    C. From engaging in unfair competition against Plaintiffs;    *How? I'm retired!*

    D. From further mentioning of OXEBRIDGE or PARIS on Elsmar.com during the pendency of this lawsuit; and

    E. Such other and further relief this Honorable Court deems equitable and just under the circumstances.

### DEMAND FOR JURY TRIAL

    Plaintiffs, by and through their undersigned counsel, hereby demand trial by jury on all issues so triable as a matter of law pursuant to Rule 38 of the Federal Rules of Civil Procedure.

    DATED and respectfully submitted this 31st day of December 2014.

WILLIAM R. WOHLSIFER, PA

By: _____
William R. Wohlsifer, Esquire
Fla. Bar No: 86827
1100 E Park Ave Ste B
Tallahassee, Florida 32301
Tel: (850) 219-8888
Fax: (866) 829-8174
E-Mail: william@wohlsifer.com
Attorney for Plaintiffs