**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**OXEBRIDGE QUALITY**
**RESOURCES INTERNATIONAL,**
**LLC, and CHRISTOPHER PARIS,**

      **Plaintiffs,**

**v.**                              **Case No. 8:15-cv-11-T-17TBM**

**MARC TIMOTHY SMITH, individually,**
**and d/b/a CAYMAN BUSINESS SYSTEMS,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    THIS CAUSE is before the Court on Plaintiffs' **Verified Second Notice of Defendants' Breach of Mediation Settlement Agreement and Joint Stipulation on Injunction, Motion to Compel Compliance with Injunction, Motion for Money Damages, and Motion for Attorney's Fees** (Doc. 59) and Defendant's response in opposition (Doc. 76).[1]  A show cause hearing on this matter was held March 16, 2016, following which the parties filed supplemental pleadings.  (Docs. 81-83, 93).

    As explained below, I **RECOMMEND** that the Motion (Doc. 59) be **GRANTED in part** and **DENIED in part**.

_____

[1]Defendant filed two other responses to the allegations of breach prior to receiving the Motion.  (Docs. 61, 62).

# I.

## A.

Plaintiffs initiated suit on January 5, 2015, asserting various claims against Defendant, the owner and operator of the Elsmar Cove website and forum www.elsmar.com (referred to herein as "Elsmar Cove").[2]   According to the Complaint, the parties are competitors who offer commercial consulting and training services in the ISO 9001 standard method for quality control.   In brief, Plaintiffs alleged that Defendant used his website and other forums to disparage them and cause harm to their business.   (Doc. 1).

On February 19, 2015, Plaintiffs filed an Amended Motion for Preliminary Injunction seeking an order directing Defendant to remove all comments and postings from Elsmar Cove and elsewhere that made reference to Plaintiffs or settlement discussions. (Doc. 14).   Thereafter, on March 19, 2015, the parties filed a Joint Stipulation on Injunction, through which the parties agreed to, among other things, refrain from publishing content regarding each other on their respective websites and Defendant agreed to remove posts and online commentary regarding Plaintiffs.   (Doc. 33).   By Order dated March 23, 2015, the Court approved the Joint Stipulation on Injunction (the "Approval Order") and expressly retained jurisdiction to enforce the terms and provisions of the same.   (Doc. 35).

---

[2]Plaintiffs brought claims for unfair competition under 15 U.S.C. § 1125; violation of Fla. Stat. §§ 772.102(1)(a)(26), 772.104(1), and 836.05 (extortion); defamation per se; defamation; libel; injurious falsehood; and injunctive relief.   (Doc. 1).

2

On June 3, 2015, Plaintiffs filed a Notice of Defendant's Breach of the Joint Stipulation on Injunction and Violation of Court Order and Motion to Compel Compliance with the Joint Stipulation on Injunction.   (Doc. 48).   In short, Plaintiffs contended that Defendant breached the terms of the Joint Stipulation on Injunction by failing to remove postings about them from Elsmar Cove and other websites.

On June 5, 2015, the parties mediated their disputes and reached a settlement of the case.   (Doc. 49).   On June 9, 2015, the Court entered a 60-day Order administratively closing the case.   (Doc. 50).   And, on July 2, 2015, the parties filed a Joint Stipulation of Dismissal with Prejudice (the "Stipulation of Dismissal"), dismissing the action and all claims and counterclaims with prejudice.   (Doc. 52).   The Stipulation of Dismissal provided that the Joint Stipulation on Injunction "shall survive the dismissal...."   (*Id.,* citing Docs. 33, 35). On July 6, 2015, pursuant to the Stipulation of Dismissal, the Court dismissed the case with prejudice (the "Dismissal Order").   (Doc. 53).

On September 30, 2015, Plaintiffs filed their Second Notice of Defendant's Breach of Mediation Settlement Agreement and Joint Stipulation on Injunction, Motion to Compel Compliance with Injunction, Motion for Money Damages, and Motion for Attorney's Fees (the "Motion"), complaining that Defendant violated the Joint Stipulation on Injunction, the Approval Order, and the parties' Mediated Settlement Agreement (the "MSA").   (Doc. 59). Therein, Plaintiffs explained that by entering into the MSA, they waived their claim for significant financial damages in exchange for Defendant's agreement to discontinue Elsmar Cove and all participation in the Quality Assurance Industry in anticipation that they would be

able to recoup their damages by establishing a new Quality Assurance Forum to stand in the stead of Elsmar Cove.   They urge Defendant's alleged breaches thwarted that, which was their sole motivation for settling, and instead resulted in damage to their reputation as well as severe financial damage, both personally and professionally.   They claim a significant loss of business and revenue which could force them out of the Quality Assurance Industry.   As a consequence of the alleged breaches, Plaintiffs seek an Order compelling Defendant to comply with the terms of the Joint Stipulation on Injunction, the Approval Order, and the MSA, as well as monetary sanctions, compensatory damages, and attorney's fees.

Defendant opposes the Motion.   In short, Defendant denies the allegations and/or contends that compliance with certain terms of the Joint Stipulation on Injunction and MSA was not possible.[3]   Defendant requests that the Court sanction Plaintiffs for filing a frivolous motion and award him the costs he incurred in opposing the Motion.   (Doc. 76).

On January 12, 2016, the undersigned held a telephone status conference to address the Motion.   (Doc. 68).   Thereafter, an Order to Show Cause issued directing Defendant to appear and show cause why he should not be held in contempt or otherwise sanctioned for breaching the MSA and Joint Stipulation on Injunction.   (Doc. 69).

The show cause hearing was held on March 16, 2016.   (Doc. 79).   Plaintiff Christopher Paris testified and introduced documentary evidence.   (Doc. 80).   Plaintiffs also

---

[3]Defendant challenges the validity of the Joint Stipulation on Injunction in response to the instant Motion and by way of separate motion.   (Doc. 74).   This Report and Recommendation is issued on the assumption that the Joint Stipulation on Injunction is valid and binding.

called Defendant Marc Smith to testify.   Mr. Smith testified on his own behalf.   The parties

also filed post-hearing supplements to their pleadings and arguments.   (Docs. 81-83, 93).

**B.**

Plaintiffs allege that Defendant's actions or inactions violated provisions of the Joint

Stipulation on Injunction and the MSA.   Specifically, Plaintiffs contend Defendant violated

the following:

Paragraph 5(a)-(c) of the Joint Stipulation on Injunction:

5.      SMITH agrees to refrain from publishing commentary on the personal,
        professional, business or other affairs of PARIS and OXEBRIDGE.   More
        specifically:

        a.      SMITH will remove all posts, links and other subject matter
                mentioning OXEBRIDGE or PARIS currently on the
                Elsmar.com Internet forum.   Such removal must be
                permanent so that the posts, links and other subject matter
                cannot be retrieved or revived at a later date.

        b.      SMITH will remove any online commentary regarding
                OXEBRIDGE or PARIS authored by SMITH on any other
                website, social network, or any other manner of technology
                or communication now known or later to become known.

        c.      SMITH will not publish any new content about
                OXEBRIDGE or PARIS on the Elsmar.com Internet forum,
                any other website, social network, or any other manner of
                technology or communication now known or later to become
                known, whether under his real name, anonymously or
                pseudonymously, or through the collaboration of any third
                party.

(Doc. 33, ¶ 5); and

Paragraph 1, subsection 2(d) of the MSA:[4]

> Within 30 days from the date of this Agreement, Defendant shall: ... Shut down and cease operating www.elsmar.com and will not operate any similar website relating to the "ISO" industry in the future (however Defendant shall retain all ownership and rights relating to www.elsmar.com).... and

Paragraph 3 of the MSA:

> The terms of this Settlement Agreement shall be kept strictly confidential, and such confidentiality shall be enforceable by a Court of competent jurisdiction.

(Doc. 60-1, ¶ 1 subsection (2)(d), ¶ 3).

On the instant Motion, Plaintiffs allege generally that Defendant violated the Joint Stipulation on Injunction by failing to permanently remove the Elsmar Cove website and the content that he published about them on other websites, and that Defendant violated the MSA by:   (1) failing to shut down Elsmar Cove and to remove material he posted online about Plaintiffs; (2)  discussing the MSA in violation of its confidentiality provision; (3) making or contributing to voluminous defamatory and harmful postings that blame Plaintiffs for the take down of Elsmar Cove; and (4) casting Plaintiffs in a false and negative light by identifying this action as a criminal suit rather than a civil suit.[5]

---

[4]Paragraph 1 of the MSA is captioned "Exchange of Consideration," and includes eight subsections.   Although the Motion references Paragraph 1(d), Plaintiffs actually contend Defendant violated Paragraph 1, subsection 2(d).

[5]Attached to the Motion is Mr. Paris's Verified Statement suggesting a timeline and numerous "Breaches of the Mediation Settlement Agreement."   (Doc. 59-1 at 15-28).

6

## C.

At the show cause hearing, Plaintiffs offered the testimony of Mr. Paris and introduced eleven exhibits.   Mr. Paris's testimony essentially tracked the information summarized in Plaintiffs' Hearing Exhibit 6, which sets forth six categories of violations in a "Summary of Most Egregious Breaches of the Mediation Settlement Agreement and Joint Stipulation [on Injunction] as of March 14, 2016."   For ease of reference, this Report addresses the alleged violations as set forth in Plaintiffs' Hearing Exhibit 6 and testified to by Mr. Paris.

The first category of violations involve Defendant's alleged failure to shut down and cease operating Elsmar Cove after July 5, 2015, in breach of the MSA; his failure to abide by the confidentiality provision in the MSA; and his failure to permanently remove all content and material he posted/published regarding the Plaintiffs on Elsmar Cove and other websites, forums, etc. in violation of the paragraphs 5(a)-(c) of the Joint Stipulation on Injunction.   In particular, Plaintiffs allege the following violations:

> Defendant failed to shut down and cease operating Elsmar Cove within thirty days as required by the MSA; and before shutting it down, Defendant "polluted the waters" by posting a message/banner announcement on the website stating "rest in peace Elsmar Cove," Elsmar Cove is now permanently closed due to [this lawsuit which is cited by case number];

> On June 23, 2015, Defendant posted on Elsmar Cove that he had to close the website because of a lawsuit settlement, which he could not discuss.   As stated, he had "to burn the library."   As a consequence of discussing the MSA, Plaintiffs received hundreds of derogatory messages and hate mail;

On July 7, 2015, Defendant stated in an interview that Elsmar Cove was closed as part of a settlement stemming from a civil suit filed in Florida, which was published on www.standardsforum.com;

In July 2015, Defendant posted two derogatory messages on his LinkedIn page, one referring to the suit as "criminal" and the other suggesting Elsmar Cove was taken down by a person "who cannot stand criticism and resorted to taking 19 years of centralized information, opinions, interpretations, friendships, etc. off of the internet;"

Defendant "cloned" Elsmar Cove and had it reposted on Reddit, www.reddit.com/r/elsmarcove,[6] which was then picked up by and reposted on Reactant, http://www.reacttant.com/r/elsmarcove;[7] and

Defendant gave permission for another individual to start a new ISO-related forum in Russia under the name Elsmar.

The second category of violations pertains to documents Defendant allegedly posted or caused to be posted on Scribd, www.scribd.com.[8]   In particular, Plaintiffs contend that

_____

[6]"Reddit is a social news website and forum where stories are socially curated and promoted by site members.   The site name is a play on the words 'I read it.'   [It] is composed of hundreds of sub-communities, known as 'subreddits.'   Each subreddit has a specific topic such as technology, politics or music.   Reddit site members, also known as, 'redditors,' submit content which is then voted upon by other members.   The goal is to send well-regarded stories to the top of the site's main thread page." http://searchcio.techtarget.com/definition/Reddit (last visited July 19, 2016).

[7]"Reacttant is a reddit web-client built with reactJS and Laravel." http://www.reacttant.com/about (last visited July 20, 2016).

[8]Scribd is a digital library subscription service.   It is an open publishing platform. *See* http://support.scribd.com/hc/en-us/articles/210135426-What-is-Scribe- (last visited July 20, 2016).

(1) a person named Kathryn Rubino posted a sealed document from this case on Scribd in October 2015, and (2) Defendant, using the name "Paris Oxebridge,"[9] posted the same sealed document on Scribd in November 2015.   Plaintiffs attribute both postings to Defendant because he was the only one who had access to the sealed document -- a copy of the Complaint in this case that contained handwritten comments or notes made by Defendant that were false and highly defamatory of Mr. Paris and Oxebridge.

The third category of violations identifies numerous blogs and/or websites that addressed the parties' disputes in this case, publicized Defendant's version of the events, and otherwise were critical or defamatory of Plaintiffs.   According to Mr. Paris, the information was "spreading like wildfire" on the numerous blogs all because Defendant posted the closing of Elsmar Cove by reason of the settlement.

The fourth category of violations pertain to postings Defendant allegedly made on previously public groups in LinkedIn, which cast Plaintiffs in a bad light and which Mr. Paris presumes are still posted.

The fifth and sixth category of violations pertain to old posts Defendant allegedly made about Plaintiffs that still remain online in violation of the provisions of the Joint Stipulation on Injunction requiring Defendant to take down references to Plaintiffs authored by Defendant.   Included in this group is a listing of URLs from Google Groups[10] and

---

[9]According to Mr. Paris, Defendant has referred to Plaintiffs as "Paris Oxebridge" for years.

[10]"'Google Groups' is a collaborative space for online discussions around any topic.... It is one of Google's oldest services and also supports many Usenet newsgroups."

Quality1Stop.[11]   By Plaintiffs' argument, it is entirely within Defendant's ability to take down these posts but he has failed to do anything about them despite the Joint Stipulation on Injunction.   Given that Plaintiffs' number one source of referrals and sales is through Google searches, Plaintiffs contend they have been seriously harmed by those postings.   To illustrate, Mr. Paris states his Google postings are now nearly 50% negative and contain information posted by Defendant or derived from his postings.   According to Mr. Paris, sales have dropped to zero and his professional career is over.

## II.

### A.

Injunctions are enforced through a court's civil contempt power in a contempt proceeding.   *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) (citations omitted).   If a party contends that another party is violating an injunction, the aggrieved party should file a motion in the case in which the injunction was issued for an order to show cause why the other party should not be held in civil contempt.   *Id.*

---

http://www.maekuseof.com/tag/10-ways-to-make-the-most-of-google-groups/ (last visited July 19, 2016).   "Usenet is a global Internet discussion system created in 1980.   It was the first Internet community.... To make sure Usenet archives are available to everyone, Google integrated the past 20 years of discussion into Google Groups. https://www.support.google.com/groups/answer/6003482?hl=en&ref_topic=9216 (last visited July 19, 2016).   Google does not control content on Usenet groups.   *See id.*

[11]Quality1Stop is a "1 stop portal website dedicated to ISO 9001, ISO 14000, ISO/TS 16949, ISO 13485, HACCP, Six-Sigma, and all other quality standards and related issues." http://www.quality1stop.com/ (last visited July 20, 2016).

A finding of civil contempt must be supported by clear and convincing evidence establishing "(1) that the allegedly violated order was valid and lawful, (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002).[12]   Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor to produce evidence explaining his noncompliance at a show cause hearing.   *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998).   The alleged contemnor may defend on grounds that he did not violate the court order or that he violated the court order but should be excused from complying because he was unable to comply.   *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).

To succeed on an inability defense, "the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid."   *In re Lawrence*, 279 F.3d 1294, 1297 (11th Cir. 2002) (quoting *Wellington Precious Metals, Inc.*, 950 F.2d at 1529). Claimed diligence or good faith efforts are not defenses to civil contempt.[13]   *FTC v. Leshin*,

---

[12]"In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard."   *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (quotation omitted).   Any ambiguities or uncertainties in a court order will be construed by the court in a light favorable to the person charged with contempt.   *Id.* (citation omitted).

[13]Diligence or good faith efforts may, however, be factors for consideration "in assessing penalties, a matter as to which the district court has considerable discretion."   *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 880 (Fed. Cir. 2011).

618 F.3d 1221, 1232 (11th Cir. 2010) (hereinafter "*Leshin I*").   Rather, the only issue is

compliance.   *See id.*; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("An act

does not cease to be a violation of a law and of a decree merely because it may have been

done innocently.").   If the alleged contemnor meets his burden of production on his inability

to comply, the burden then shifts back to the initiating party to show by clear and convincing

evidence that the alleged contemnor was, in fact, able to comply with the court's order.

*Wellington Precious Metals, Inc.*, 950 F.2d at 1529.

## B.

General principles of state contract law govern a settlement agreement between two

private parties, even when the settlement agreement arose in federal litigation.   *Resnick v.*

*Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000).   Here, Plaintiffs seek

both to enforce terms of the MSA *and* damages based on Defendant's alleged breach of the

MSA.   In *Paulucci v. General Dynamics Corp.*, 842 So.2d 797, 803 (Fla. 2003), the Florida

Supreme Court approved the distinction between enforcement of a [settlement] agreement and

breach of that [settlement] agreement:

> By enforcing a contract, it is assumed that the contract has
> continuing validity and a party is ordered to comply with its
> terms.   A breach of contract action presupposes that the
> contractual relationship is at an end because of a material
> breach by one party and damages are sought by the
> non-breaching party as a substitute for performance.

*Id.* at 803.

The distinction is important.   A trial court does not have jurisdiction under a

settlement agreement to award damages for breach of a settlement agreement's provisions,

*Boca Petroco, Inc. v. Petroleum Realty I, LLC*, 993 So.2d 1092, 1094 (Fla. Dist. Ct. App. 2008), and it has only limited jurisdiction to enforce the terms of a settlement agreement.

## III.

Plaintiffs' contention that Defendant breached the MSA is addressed first.    I conclude that Plaintiffs are not entitled to relief under the MSA.

This Court does not have jurisdiction to award damages for Defendant's alleged violations of the MSA.   *See Boca Petroco, Inc.*, 993 So.2d at 1094 (holding that trial court did not have jurisdiction under a settlement agreement to award damages for breach of a settlement agreement's provisions).   To the extent Plaintiffs seek "sanctions" in the form of damages for impairment of Plaintiffs' reputation, income, stress and anxiety, those too are damages which might have been incurred as a result of Defendant's alleged violations of the MSA.   Merely calling it a sanction when it is a claim for damages does not provide jurisdiction in this Court.   Plaintiffs fail to address this jurisdictional wrinkle, let alone provide legal authority to the contrary.

Nor does this Court, under the circumstances presented, have jurisdiction to enforce the terms of the MSA.   Rule 41 allows a plaintiff to voluntarily dismiss his lawsuit without a court order by filing "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii).   The right to dismiss a case by stipulation is not absolute, but is "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute."   Fed. R. Civ. P. 41(a)(1)(A).   In cases in which none of these exceptions apply, a stipulation of dismissal is effective upon filing (unless the stipulation specifies otherwise) and immediately

divests the district court of subject matter jurisdiction.   *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012).   On July 2, 2015, this case was dismissed upon the filing of the parties' Stipulation of Dismissal, and none of the exceptions set forth in Rule 41(a)(1)(A) apply.   Thereafter, on July 6, 2015, the Court ordered dismissal of the case with prejudice.   Once a case has been dismissed, a federal court does not retain jurisdiction to enforce a settlement agreement simply on the basis of its prior authority over the underlying dispute.   *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994); *Anago Franchising, Inc.*, 677 F.3d at 1278 ("enforcement of a settlement agreement falls outside of the scope of ancillary jurisdiction of the federal courts, even when the court had jurisdiction to hear the underlying case").

To retain jurisdiction where the parties dismiss the case by filing a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii), the court must either (1) enter an order retaining jurisdiction before the settlement agreement becomes effective, or (2) the parties must condition the effectiveness of the stipulation on the trial court's entry of an order retaining jurisdiction.   *Anago Franchising, Inc.*, 677 F.3d at 1279; *Paulucci*, 842 So.2d at 803.   The parties in this case did not take either of these steps – they neither filed a motion requesting that the Court retain jurisdiction, nor did they condition the Stipulation of Dismissal on any jurisdictional order.

Plaintiffs contend the Court approved the MSA in its 60-day Order.   (*See* Doc. 59 at 2, ¶ 9).   Plaintiffs are incorrect.   That Order did not mention the MSA.   Rather, it simply directed administrative closure of the case upon receiving notice of settlement.   (*See* Doc.

14

50).   Nor did other settlement documents reserve jurisdiction.   The notice of settlement in this case first came from the mediator's report of settlement.   (*See* Doc. 49).   It did not reveal the terms of the settlement or indicate the settlement was premised on the retention of jurisdiction.   (*See id.*).   The Stipulation of Dismissal (Doc. 52) and the Dismissal Order (Doc. 53) also fail to address the MSA or compliance therewith, and the MSA itself was not filed with the Court until September 2015.

Although the parties included a provision in the MSA stating that this Court "may enforce" the terms of the same (Doc. 60-1 at 7, ¶6), the parties cannot extend the Court's jurisdiction by agreement.   *See Anago Franchising, Inc.*, 677 F.3d at 1279 ("To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough.").[14]   Contrary to Plaintiffs' assertions, the MSA did not provide for an award of damages.   (*See* Doc. 60-1, ¶ 1 subsection 6) (stating that the sole remedy for a breach shall be enforcement of the MSA).   In sum, the Court is without jurisdiction to entertain the enforcement action sought by the instant Motion.

## IV.

### A.

In contrast to the MSA, I conclude that the Court did retain jurisdiction to enforce the Joint Stipulation on Injunction.

---

[14]Finally, it is worth repeating that even if this Court had jurisdiction to enforce the MSA, by its terms the only relief available to the prevailing party besides enforcement would be an award of fees and costs incurred in the same.   (*See* Doc. 60-1, ¶ 6).

As outlined above, on March 19, 2015, the parties filed a Joint Stipulation on Injunction resolving Plaintiffs' Motion and Amended Motion for Preliminary Injunctive relief, both of which sought to enjoin Defendant from making derogatory comments and posts on Elsmar Cove and elsewhere and from posting settlement offers online.   (Docs. 9, 14). Among other matters and pertinent to this dispute, the Joint Stipulation on Injunction stated that:    (1) the Court would "retain jurisdiction over the parties and the subject matter of this agreement for the purpose of enforcement of its terms and provisions;" (2) its provisions were enforceable by contempt; and (3) the parties acknowledged that on approval by the Court, Count VII, which sought temporary and permanent injunctive relief, would be rendered moot. (Doc. 33 at 3, ¶¶ 8, 11, 12).   On March 23, 2016, the Court approved the Joint Stipulation on Injunction, granted the Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction, and "retain[ed] jurisdiction over the parties and the subject matter of this agreement for the purpose of enforcement of its terms and provisions."   (Doc. 35).

A few days later, the parties filed the Notice of Settlement.   (Doc. 51).   Then, on July 2, 2015, the parties filed a Joint Stipulation of Dismissal with Prejudice, thereby agreeing to dismissal of all claims and counterclaims.   (Doc. 52).   Both in the Notice of Settlement (Doc. 51, ¶ 1) and in the Joint Stipulation of Dismissal (Doc. 52 at 1), the parties stated that the Joint Stipulation on Injunction "shall survive the dismissal of this case."

From all of this, I find that the parties agreed to resolve the whole of their disputes under this suit subject to the provisions of the MSA and the Joint Stipulation on Injunction. Because the Court retained jurisdiction over enforcement of the terms of the Joint Stipulation

on Injunction prior to the filing of the Stipulation of Dismissal, such ancillary proceedings related to alleged violations of the Joint Stipulation on Injunction may be enforced in this Court.

## B.

As an initial matter, I find that the Joint Stipulation on Injunction (Doc. 33) and the Approval Order (Doc. 35) are valid and lawful and the language in the provisions allegedly violated is clear and unambiguous.   As such, the issues for consideration are whether Defendant violated the terms of the Joint Stipulation on Injunction in the manners alleged, whether such are actionable on Plaintiffs' instant Motion, and if so, whether there is clear and convincing evidence that Defendant had the ability to comply with the terms of the Joint Stipulation on Injunction he allegedly violated.

As indicated above, the alleged violations are set forth in Plaintiffs' Hearing Exhibit 6 and Mr. Paris's testimony.   Plaintiffs, however, do not identify the specific provisions of the Joint Stipulation on Injunction violated by each of the alleged violations, and it appears from the Motion and Mr. Paris's verified statement that many of the claimed violations are alleged to have violated the MSA and not the Joint Stipulation on Injunction.   Nonetheless, out of an abundance of caution, the undersigned will consider each violation alleged in Plaintiffs' Hearing Exhibit 6.   For ease of reference, the violations alleged are addressed according to whether they were released by operation of the MSA or whether they may have

violated Paragraph 5(a), (b), or (c) of the Joint Stipulation on Injunction.[15]   And, any of the

violations alleged that do not appear to fall within those provisions are addressed separately.

**(1)**

At the outset, I find that Plaintiffs released any claims that Defendant violated the

terms of Paragraph 5(a), (b), and (c) allegedly occurring on or before the date of the release

set forth in the MSA dated June 5, 2015.

The MSA does not speak to the Joint Stipulation on Injunction except to say that it

survived the settlement.   (Doc. 60-1, ¶ 1 subsection 3).   However, the MSA did provide

that:

> Except for the terms and conditions of this MSA, which
> Agreement shall survive releases exchanged between the
> parties, the parties to this MSA have agreed, and do hereby
> agree, to release, acquit, and discharge one another from all
> claims, causes of action, or damages which were asserted, or
> might have been asserted, in all of the pleadings and claims
> filed in the above captioned proceeding.   The parties agree to
> execute and exchange mutual general releases ... and this
> action shall be dismissed with prejudice....

(Doc. 60-1, ¶ 2).

Given this language, any and all claims up through the date of the MSA – June 5,

2015 – were released under the MSA.   Thus, to the extent that Plaintiffs complain that

Defendant failed to take down postings and other matters directed to or about Plaintiffs from

Elsmar Cove or any other website by that date or that Defendant published new content on

---

[15]These are the provisions of the Joint Stipulation on Injunction that Plaintiffs
mentioned in the Motion and at the hearing.

Elsmar Cove or any other website prior to that date, Plaintiffs have released such complaints from consideration on the instant Motion.

**(2)**

Paragraph 5(a) of the Joint Stipulation on Injunction required that Defendant remove all posts, links and other subject matter mentioning Oxebridge or Paris *currently* on the Elsmar Cove internet forum/website.

On the instant Motion, Plaintiffs refer to this provision only in passing.   (*See* Doc. 59 at 6, ¶ 24) (alleging Defendant violated paragraph 5(a)-(b) of the Joint Stipulation by failing to permanently removing www.elsmar.com).[16]     Nothing in the Joint Stipulation on Injunction, at paragraph 5(a) or otherwise, required Defendant to permanently remove the Elsmar Cove website.   Rather, the permanent removal of the website was dictated later by the terms of the MSA.   Further, any claim that Defendant violated paragraph 5(a) by failing to remove any and all mention of Oxebridge and Paris from Elsmar Cove prior to the June 5, 2015, would have been released, and Plaintiffs do not allege or prove that any mention of them on Elsmar Cove at the time the Joint Stipulation on Injunction was entered remained on Elsmar Cove after June 5, 2015, or that Defendant failed to remove any such commentary in

---

[16]In their Motion, Plaintiffs also alleged Defendant violated the Joint Stipulation on Injunction by failing to remove commentary on them in Google Groups threads and on the Quality1Stop forum.   (Doc. 59 at 6, ¶ 24).   However, the provision at paragraph 5(a) required Defendant to remove commentary from Elsmar Cove, so his failure to remove commentary from those could not result in a violation of paragraph 5(a).

violation of paragraph 5(a).   There simply is no evidence on this record that Defendant

violated this provision of the Joint Stipulation on Injunction.

**(3)**

Paragraph 5(b) required Defendant to remove any online commentary regarding

Oxebridge or Paris *that he authored* on any other website, social network, or any other

manner of technology or communication now known or later to become known.

The violations alleged that arguably fall within the scope of this provision are

Defendant's alleged failure to remove posts he made on previously public LinkedIn Groups,

numerous threads and/or posts referencing them in Google Groups, and posts on the

Quality1Stop forum.   (*See* Pls.' Hr'g Ex. 6 at V, VI).   Defendant's alleged cloning or

reposting of the entire Elsmar Cove website on Reddit, which led to it being reposted on

Reacttant, also may arguably be considered within the scope of this provision.    (*See* Pls.'

Hr'g Ex. 4).

On these allegations, Defendant counters that he removed references he made about

Plaintiffs where he could, but he does not have the ability to remove old postings on Google

Groups and the Quality1Stop forum.   Defendant concedes there may be postings that remain

on LinkedIn Groups but contends that he does not have access to all of the Groups on which

he posted and Plaintiffs only "presume" that the postings exist.    As for the reposting of

Elsmar Cove on Reddit (and subsequent posting on Reacttant), Defendant denies he had

anything to do with it.    In any event, Defendant claims he attempted to have the content

removed from Reddit and proffers an email he sent to Reddit requesting the removal and Reddit's response stating that it would not.

Here, the evidence demonstrates that Defendant has done little or nothing to remove the very dated commentary from the Google Groups URLs or the Quality1Stop URLs identified by Plaintiffs.   Some of the postings on the Google Groups threads[17]  and the Quality1Stop threads are still accessible and contain Defendant's commentary.[18]   Defendant made some effort to have the Elsmar Cove content removed from Reddit, but at least one screen shot with graphics and text taken from Elsmar Cove before it was taken down completely still remain available on Reddit.   (*See* Pls.' Hr'g Ex. 4).   Under the applicable standard, the question is whether Defendant had the ability to comply with paragraph 5(b) and remove the postings and commentary.

The proof by both parties on this point was sketchy and minimal at best.   At the hearing, Mr. Paris broadly assured the Court that Defendant could take down these postings if he tried.   Defendant, on the other hand, denied vehemently that it was possible for him to take down or remove commentary or posts still appearing on Google Groups and the Quality1Stop forum.   As for Reddit, Defendant stated that he tried to have the Elsmar Cove

---

[17]Plaintiffs list thirteen Google Groups URLs.   (*See* Pls.' Hr'g Ex. 6 at V).   Four of the links appear to be permanently deleted, and two are either invalid or deleted.   Of the seven links remaining, all contain posts made in 2004 or 2005 or earlier.   By my assessment, some of the posts reflect bad blood between Mr. Paris and Mr. Smith.

[18]The two links from the Quality1Stop forum reveal that both Mr. Paris and Mr. Smith posted on this forum in April 2004.   (*See* Pls.' Hr'g Ex. 6 at VI).

"clone" or reposting on Reddit removed in July 2015 but he was rebuffed by Reddit, and in his post-hearing submissions, Defendant included an email communication between a Reddit representative and Plaintiffs' counsel purporting to show that his request was denied.   (*See* Doc. 83-2 at 1-3).

The evidence reveals that Defendant did not make any serious attempt to take down his commentary on the Google Groups URLs or the Quality1Stop URLs identified by Plaintiffs.   While Defendant claimed it was not possible to remove the old commentary on those URLs, to succeed on an inability defense he was required "go beyond a mere assertion of inability and establish that he made in good faith all reasonable efforts to meet the terms of the court order."   *Wellington Precious Metals, Inc.*, 950 F.2d at 1529.   Defendant fails to establish that he did so.   As a result, I find that Defendant violated paragraph 5(b) of the Joint Stipulation on Injunction and the Court's Approval Order.[19]

As for the alleged violations related to Reddit (and Reacttant), I find that Plaintiffs fail to demonstrate the violations by clear and convincing evidence.   There is no proof that Defendant was the one who reposted the Elsmar Cove website onto Reddit or that he conspired with another individual to do so.   Notably, Plaintiffs do not seriously contend

---

[19]Defendant attempts to shift the blame for this to Plaintiffs because their counsel did not forward a letter to him as referenced in the MSA.   The MSA does contain a provision that Defendant would, if requested, sign a letter to Google.com prepared by Plaintiffs' counsel consenting to the removal from Google.com of Elsmar Cove postings referencing Plaintiffs. (*See* Pls.' Hr'g Ex. 1 at 2).   I read this as a separate matter from the removal of commentary on the Google Groups URLs and the Quality1Stop forum.

otherwise.[20]   In any event, I find that Defendant establishes that he made good faith reasonable efforts to have the content removed but could not.   The email correspondence between Mr. Paris and Reddit appears to support Defendant's assertion (Doc. 82, Ex. A), and Plaintiffs offer nothing to the contrary.[21]

Plaintiffs also fail to demonstrate by clear and convincing evidence the violations alleged that pertain to postings or commentary Defendant made on LinkedIn Groups.   While Mr. Paris believes Defendant made numerous posts about them on LinkedIn Groups that cast them in a bad light and have not been taken down, he testified that the postings or commentary are no longer accessible to him and he can only *presume* that Defendant has not had them removed.   Obviously, this is something less than clear and convincing evidence, and, except as addressed below, Plaintiffs are not entitled to relief on allegations that offending material authored by Defendant may still exist on LinkedIn Groups.

**(4)**

Paragraph 5(c) barred Defendant from publishing any *new content* about Oxebridge or Paris on Elsmar Cove or on any other website.   The violations alleged by Plaintiffs that may fall within the scope of this provision may include Defendant posting: (1) information on Elsmar Cove pertaining to the website's closure and blaming the closure on this lawsuit, which at one point was referenced by case number and with added commentary that he was "forced

---

[20]For the same reasons, these violations are not demonstrated under paragraph 5(c).

[21]Plaintiffs argued at hearing that a Digital Millennium Copyright Act (DMCA) notification could be used in these circumstances; however, such is not demonstrated.

to burn down the library;"[22]  (2) on LinkedIn in July 2015 that this case was a "criminal lawsuit," and that Elsmar Cove was taken down and its library burned by "a person who cannot stand criticism and resorted to taking 19 years of centralized information, opinions, interpretations, friendship, etc. off the internet;" (3) directly or through others, sealed court documents on Scribd in October and November 2015; (4) or causing to be posted numerous derogatory comments directed toward Plaintiffs; and (5) or reposting the entire ElsmarCove website on Reddit.

In opposition, Defendant states that he shut down and ceased operating Elsmar Cove shortly after the settlement was reached in June 2015.   He concedes that for a brief period thereafter, there was a single page announcing its closure but even that came down after a couple of weeks.   Regardless, Defendant urges that the content on the single page, including the reference to this lawsuit, did not violate the Joint Stipulation on Injunction because it did not include any mention of Oxebridge or Paris.   As for the allegation that he referred to this action as a criminal action on LinkedIn, Defendant denies doing so, noting that he expressly stated that it was a civil suit.   As for the content on Scribd, Defendant vehemently denies posting the sealed documents on Scribd or giving the documents to someone else to post.   To the extent Plaintiffs fault him for the derogatory comments posted about them online, Defendant states that he has no control over the internet or what others post.   Finally, as

---

[22]By Plaintiffs' account, those announcements generated a good deal of animosity towards them and numerous derogatory postings after it was discovered that they were involved in this suit.

reflected above, Defendant denies having anything to do with the reposting of Elsmar Cove on Reddit (and Reacttant).

Plaintiffs present clear and convincing evidence of one claimed violation – they demonstrate that Defendant published new content about Mr. Paris on LinkedIn in violation of paragraph 5(c) by posting:

> Taking Elsmar Cove down was Burning Down the Library by a person who cannot stand criticism and resorted to taking 19 years of centralized information, opinions, interpretations, friendships, etc. off of the internet.

While Defendant did not mention Mr. Paris by name, by the time of this posting it had been revealed that Mr. Paris and Oxebridge were the plaintiffs in this case.   Defendant's prior revelation of the case number, as well as the inquiries and posts by others who had investigated the matter, left no doubt that Mr. Paris was the subject of this critical comment. Notably, Defendant made no attempt to refute or rebut this allegation.

Plaintiffs, however, fail to demonstrate the other claimed violations of paragraph 5(c) by clear and convincing evidence.   Defendant's postings regarding the demise of Elsmar Cove did not violate the express terms of paragraph 5(c).[23]   Nothing in the Joint Stipulation on Injunction precluded Defendant from posting announcements on Elsmar Cove about its

---

[23]Plaintiffs demonstrate that the announcement prompted some who followed or participated in the forum on Elsmar Cove to post adverse and negative comments about them. The comments of others, however, do not violate the terms of the Joint Stipulation on Injunction.

closure, and I do not read the announcements as publishing new content about Plaintiffs.[24]

Neither the banner nor other descriptions about the closing of Elsmar Cove expressly

mentioned Oxebridge or Mr. Paris.

Plaintiffs also fail to demonstrate by clear and convincing evidence that the

comments Defendant made on his LinkedIn page on July 7, 2015, violated paragraph 5(c).

Contrary to Plaintiffs' assertion, Defendant did not comment that this lawsuit was a "criminal"

matter; rather, he clarified that it was a civil matter.   (*See* Pls.' Hr'g Ex. 6 at I).

As for the document postings on Scribd, Plaintiffs fail to demonstrate by clear and

convincing evidence that Defendant is "ParisOxebridge," i.e., the one who posted the sealed

court document (Doc. 61-1) on Scribd on November 17, 2015.   (*See* Pls.' Hr'g Ex. 7).   They

also fail to proffer adequate evidence establishing that Defendant is "Kathryn Rubino" or that

he collaborated with such person to post the same sealed annotated version of the Complaint

on Scribd on October 14, 2015.   (*See* Pls.' Hr'g Ex. 9).   While Plaintiffs urge Defendant had

to be the one that posted the sealed document (Doc. 61-1) on Scribd because he was the only

one that had access to it, the electronic docket in this case reflects that the document was filed

on October 5, 2015, and docketed on October 7, 2015, but it was not sealed until October 14,

2015.   (*See* Doc. 63).   That the sealed document (Doc. 61-1) was in the public record in this

---

[24]While it is clear on this record that Elsmar Cove remained up as of July 2, 2015, it is
unclear exactly when it was taken down completely.   Defendant states Elsmar Cove was shut
down on June 30, 2015, and all content was removed.   He states that, after that date all that
remained was a single page announcing the closing of the site, which remained until the
server was taken off line a couple weeks later.   Mr. Paris appears to concede that Elsmar
Cove was down completely by early August 2015.

case for approximately seven days undermines Plaintiffs' theory that Defendant was the only one that had access to the document and therefore was the source of the filing.[25]   Aside from that, Plaintiffs proffer no evidence demonstrating that Defendant collaborated with Ms. Rubino to post the sealed document Scribd.   For essentially the same reasons, Plaintiffs fail to prove by clear and convincing evidence that Defendant posted the sealed document on Scribd in November 2015 using the name "Paris Oxebridge."   Defendant testified under oath at the hearing that he did not.   While Mr. Paris may be correct that Defendant has referred to Plaintiffs as "Paris Oxebridge" for years and therefore it is reasonable to conclude that he was behind the posting, such suspicion is less than clear and convincing evidence.

As for the allegations that Defendant posted or caused to be posted numerous derogatory comments directed toward Plaintiffs on various websites, there is inadequate proof that such was caused by Defendant.   While Plaintiffs demonstrate that Defendant's announcement on Elsmar Cove of the closing of the website generated derogatory postings about them, the provisions of paragraph 5(c) extended only to proscribing Defendant from publishing new content about Plaintiffs.   Here, there is no adequate showing that he did so.

Finally, insofar as Plaintiffs allege Defendant reposted the contents of Elsmar Cove on Reddit as a violation of paragraph 5(c), the allegation is not demonstrated by clear and convincing evidence.   Indeed, Plaintiffs do not present any evidence establishing or

---

[25]Ostensibly, the annotated version of the Complaint, which contains Defendant's handwritten comments about the allegations, was offered in support of his response to Plaintiffs' allegations of breach of the MSA and Joint Stipulation on Injunction.

suggesting that Defendant did this or had another do it for him.    In any event, the screen shot offered by Plaintiffs does not contain new content about Plaintiffs.[26]    (*See* Pls.' Hr'g Ex. 4).

**(5)**

Plaintiffs assert three additional ways Defendant's conduct violated the Joint Stipulation on Injunction in general.   In their view, the following amount to violations: (1) the interview Defendant gave with www.standardsforum.com in July 2015 (Pls.' Hr'g Ex. 6 at I-C, Ex. 3); (2) blogs and other websites which purportedly picked up the story and publicized Defendant's version of events and defamed Plaintiffs (Pls.' Hr'g Ex. 6 at III); and (3) that Defendant gave permission to Andrey Bardadym to use the name "Elsmar" when launching a new ISO-related forum in Russia (Pls.' Hr'g Ex. 6 at I-F).

On careful consideration, I find no basis to conclude this activity violated the Joint Stipulation on Injunction.   In his interview with standardsforum.com concerning the closing of Elsmar Cove, Defendant did not mention Plaintiffs.   Further, the Joint Stipulation on Injunction did not contain a confidentiality provision like the MSA; as such, Defendant's comments on the settlement and the closing of Elsmar Cove did not violate the same.

As for the blogs that picked up the story and publicized Defendant's version of the facts to Plaintiffs' detriment, the short answer is that the commentary by others concerning the closing of Elsmar Cove does not reflect Defendant's violation of the Joint Stipulation on

---

[26]The same is true with regard to the same being "picked up by" and/or posted on Reacttant.

Injunction.   Plaintiffs again fail to prove Defendant is responsible for these postings in a manner that violates the terms of the Joint Stipulation on Injunction.

As for Defendant allowing Mr. Bardadym to use the name "Elsmar" in a "project" that Plaintiffs suggest was the launch of a new ISO-related forum in Russia, the same conclusion pertains.   This simply did not violate the Joint Stipulation on Injunction. Moreover, it was done consistent with the MSA.   Under the MSA, it was agreed that Defendant retained the ownership and all rights relating to Elsmar Cove, and while he was to close down his website and not open a new one related to the ISO industry, he was not further restricted as to Elsmar Cove or to the word Elsmar.[27]   The Joint Stipulation on Injunction did not speak to this subject.

## C.

Because Plaintiffs have established by clear and convincing evidence that Defendant violated the Joint Stipulation on Injunction by failing to remove commentary about Plaintiffs found on the old Google Group URLs and the Quality1Stop forum in violation of paragraph 5(b) and by posting new commentary about Mr. Paris on LinkedIn on July 25, 2015, in violation of paragraph 5(c), a finding of contempt is warranted and sanctions must be addressed.

---

[27]Plaintiffs have argued that Defendant was required to abandon his participation in the Quality Assurance Industry, but neither the Joint Stipulation on Injunction nor the MSA included such a requirement.   While the MSA required Defendant to shut down and cease operating Elsmar Cove and prohibited him from operating a similar website relating to the "ISO" industry, it did not ban his continued participation in the Quality Assurance Industry.

The court may impose two types of remedial sanctions in a civil contempt proceeding, each of which is guided by its purpose: (1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained. *FTC v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (hereinafter "*Leshin II*") (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)), *cert. denied*, _ U.S. _, 134 S.Ct. 901 (2014).   "A coercive contempt sanction comes with some limitations; for instance, once a contemnor's contumacious conduct has ceased or the contempt has been purged, no further sanctions are permissible." *Id.* (citing *Leshin I*, 618 F.3d at 1239).   "On the other hand ... 'the district court's discretion in imposing non-coercive sanctions is particularly broad and only limited by the requirement that they be compensatory.'" *Id.* (quoting *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990)).   "Indeed, the Supreme Court has observed that district courts possess particularly expansive and flexible powers in these circumstances:   'The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.'" *Id.* (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949)).

Where the purpose of the contempt sanction is to coerce or secure compliance, the court should consider "the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)).   Sanctions of this type may include a coercive fine or coercive incarceration.   *Citronelle-Mobile*

*Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) (citations omitted). However, coercive contempt sanctions may not be used to impose what amounts to a punitive or criminal contempt sanction.   *Id.*

Where the purpose of the contempt sanction is to compensate for losses or damages sustained by reason of noncompliance, the court may impose a monetary fine.   *United Mine Workers of Am.*, 330 U.S. at 304.   To determine the amount of the remedial fine, the court must consider the extent of the complainant's actual loss and the outcome of the basic controversy.   *Id.*   The complainant bears the burden of providing the court "with the basic evidentiary facts to formulate a realistic sanction to which the defendants could respond."   *In re Chase & Sanborn, Corp.*, 872 F.2d 397, 401 (11th Cir. 1989) (bankruptcy context). Attorney's fees may be compensable as well because the costs of bringing a violation to the court's attention are also part of the damages resulting from noncompliance.   *Cook v. Oschner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

Here, Plaintiffs claim extreme economic harm by reason of Defendant's actions.   I find the claim overstated.   While Mr. Paris claims that his business has been devastated by Defendant's violations, the claim is not well demonstrated.   Indeed, the only proof of economic harm is the anecdotal claim that Oxebridge is losing business and Mr. Paris has lost income since the closing of Elsmar Cove.   That proof, however, is not otherwise demonstrated.   Moreover, even if the claims were true, there is no clear evidence that any losses should be attributed to these violations by Defendant.   Indeed, it appears the case that the animosity existing between the parties has existed for well over a decade and that it is the

nature of these various forums for people to pick sides and offer criticism.    Seemingly, Mr.

Paris and Oxebridge operated successfully for years despite the very dated commentary found

on a handful of these Google Groups URLs or on the Quality1Stop forum about which they

now complain.    Moreover, it does not appear that Defendant gained anything from the

alleged violations.    That a Google search now reveals more negative commentary about

Plaintiffs by third parties (*see* Pls.' Hr'g Exs. 10, 11), all of it cannot be attributed to the dated

commentary or to Defendant's July 25, 2015, Linkedin post lamenting the closing of Elsmar

Cove.

        To the extent that Plaintiffs suggest some form of compensatory damages based on

lost income or business, they bear the burden of proving the amount of the same by a

preponderance of the evidence.    *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir.

2000).    On the record before the Court, I am constrained to conclude that Plaintiffs do not

meet that burden.    Plaintiffs offer no basis for an award of compensatory damages tied to lost

profits or income.    Moreover, I decline to recommend a daily coercive monetary fine as it

remains entirely unclear just what steps Defendant can take to effectively take down

commentary on the old Google Groups URLs and Quality1Stop forum.    While Defendant

remains obliged to take down his commentary on those web pages and on LinkedIn, or to at

least make a good faith and real effort to do so, a daily coercive fine would be entirely and

improperly punitive.

        After careful consideration, I conclude Defendant should be sanctioned in the

nominal amount of $500.00 per violation or a total of $1,000.00.

I conclude further that a limited award of attorneys' fees and costs is warranted because Plaintiffs achieved some success on the instant Motion.    I recommend that Plaintiffs' counsel be directed to file a pleading directed to fees and costs incurred in connection with their Motion within fifteen (15) days of the Court's Order on this Report and Recommendation.

I recommend further that Defendant be directed to provide adequate proof to Plaintiffs, within twenty (20) days of the Court's Order on this Report and Recommendation, that he has taken down the offending comment from LinkedIn and made additional effort to take down his old posts about Plaintiffs on the Google Groups URLs and Quality1Stop URLS Plaintiffs identified.    If it is in fact not possible to do so, Defendant shall demonstrate as much in writing and with documentary support within sixty (60) days of the Court's Order on this Report and Recommendation by filing a motion seeking relief from the Court as to this requirement of the Joint Stipulation on Injunction.

## V.

Accordingly, I **RECOMMEND** that Plaintiffs' **Verified Second Notice of Defendants' Breach of Mediation Settlement Agreement and Joint Stipulation on Injunction, Motion to Compel Compliance with Injunction, Motion for Money Damages, and Motion for Attorney's Fees** (Doc. 59) be **GRANTED in part and DENIED in part** as set forth above.

Respectfully submitted on this
28th day of July 2016.


THOMAS B. McCOUN III
United States Magistrate Judge


## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a de novo determination by a district judge.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies to:
United States District Judge, Elizabeth A. Kovachevich
Counsel of Record
Defendant, Marc T. Smith