<u>Case 8:15-cv-00011-T-17TBM – Defendant's Response to Docket Document 99 – Report and Recommendations</u>

IN THE UNITED STATES DISTRIC COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

**Case number: 8:15-cv-00011-T-17TBM**

**Response to Report and Recommendations (Docket Document 99)**

OXEBRIDGE QUALITY RESOURCES

INTERNATIONAL, LLC, and

CHRISTOPHER PARIS, individually.

"PARIS-OXEBRIDGE" herein.

Vs.

MARC TIMOTHY SMITH, individually,

and d/b/a/ CAYMAN BUSINESS SYSTEMS

"SMITH" herein.

Presiding Judge: Elizabeth A. Kovachevich

Referring Judge: Thomas B. McCoun III

Court: Florida Middle District Court

**Case number: 8:15-cv-00011-T-17TBM**

COMES NOW the Defendant, Marc Timothy Smith, hereinafter referred to as SMITH, to object to Portions of the Report and Recommendations (Court Docket Document 99).

## General Comments

All in all, SMITH was pleased with the Report and Recommendation. SMITH believes the Magistrate Judge was fair and recognized the lawsuit and the complaint as frivolous, and based his Report and Recommendation on law and evidence. SMITH also thanks the magistrate Judge for his patience with the Pro Se Defendant during the hearing. SMITH does believe the person who represents him/herself in court is a "fool", however the reality is if one does not have, in a case such as this, hundreds of thousands of dollars to pay a lawyer the person realistically has no other option.

## Specific Objections

## The Entire Hearing was Flawed

1. The hearing was flawed to begin with. PARIS-OXEBRIDGE presented an evidence book. The Magistrate Judge, in January 2016 during the tele-conference call of 12 January 2016, gave each party approximately 60 days to exchange any evidence to be presented. Upon reading the transcript the Magistrate Judge cited a minimum of 5 days prior to the hearing to exchange evidence. Defendant believed documents submitted to the court to that time were sufficient and as such did not intend to present new / additional evidence. SMITH understands that the requirement was for PARIS-OXEBRIDGE to submit, in a timely manner, prior to the hearing. As SMITH pointed out in Docket Document 83 - Answer to CDD 79 "Minute Entry" and Docket Document 83 - Exhibit A, the attorney for PARIS-OXEBRIDGE knowingly submitted a false "Certificate of Service". SMITH never received the additional evidence and had no knowledge of it until the start of the hearing putting SMITH at a significant disadvantage.
2. PARIS-OXEBRIDGE did submit an "Evidence Book" to the court on 14 March 2016 according to PACER, but SMITH was by then on his way driving to Florida

for the 16 March 2016 hearing and had no way to access PACER to know it was submitted to the Court. But again - PARIS-OXEBRIDGE's attorney waited until the last minute and, as stated above, the "Certificate of Service was knowingly false – SMITH to this date has not received a copy of the evidence via US Mail. SMITH is appalled that this evidence book was allowed to be presented in Court.

3.  That this was intentional is also backed up by the witness SMITH brought to the hearing who saw and heard PARIS-OXEBRIDGE's attorney walk over to SMITH at the beginning of the hearing and giving him a copy and clearly stated "Here's a copy for you because I know this is the first time you have seen it." Clearly PARIS-OXEBRIDGE's attorney intended to "blind side" SMITH by not providing SMITH with a copy at least 5 days prior to the hearing. This type of practice is "the norm" for PARIS-OXEBRIDGE's attorney and as evidenced in the hearing transcript on page 8.

4.  The hearing was also flawed in that SMITH had presented a motion months ago in which SMITH claimed that the Stipulation on Injunction was fraudulent in that it was not what was agreed to yet was sent to the court by PARIS-OXEBRIDGE's attorney William R. Wohlsifer. Because there was no investigation, nor was the motion ruled on, the hearing should not have been held until the validity of the Stipulation of Injunction was fully resolved. The Magistrate Judge knew of the issue as evidenced in the hearing transcript on pages 9 and 10.

5.  SMITH believes that holding the hearing which was focused upon violations of the Joint Stipulation on Injunction was if not illegal, invalidates the hearing. How can a Court hold a hearing on an illegally submitted document?

**The Joint Stipulation on Injunction**

6.  As SMITH has submitted in earlier documents, the Stipulation on Injunction submitted to the court by PARIS-OXEBRIDGE's attorney William R. Wohlsifer was not what was agreed to (e.g.: See Court Docket Documents 70 and 74). The Court has not made a ruling on the motion submitted by SMITH. SMITH believes

the Court has an obligation to determine whether what PARIS-OXEBRIDGE's attorney William R. Wohlsifer submitted was fraud on the court, and to take into consideration that PARIS-OXEBRIDGE's attorney William R. Wohlsifer used a picture of SMITH's signature which he took from a document SMITH sent to PARIS-OXEBRIDGE's attorney William R. Wohlsifer in a preliminary document. SMITH believes the Court is interested in Justice and as such should investigate.

7. On page 25 of the Report and Recommendation, as noted SMITH did make a post on LinkedIn, however it was not SMITH who ensured that the world knew about the lawsuit, but rather PARIS-OXEBRIDGE who had, since January 2015 through July 2015 (for over 6 months), publically, continuously posted on his public website the following (markup in red is mine):

Case 8:15-cv-00011-T-17TBM – Defendant's Response to Docket Document 99 – Report and Recommendations

www.oxebridge.com/emma/official-statement-on-oxebridge-extortion-suit-against-elsmar-com-and-marc-smith/

OXEBRIDGE    Blog ▾    Services ▾    Resources ▾    Champion Projects ▾    Public Speaking ▾

*Elsmar.com. Oxebridge will be limiting its comments on the matter until the suit is resolved.*

Since 1999, Cayman Business Systems owner Marc Smith has falsely accused Oxebridge and myself of fraud and deceptive advertising, among other false accusations. Throughout that time, we tolerated this, out of respect for Elsmar's guests. However, in 2014, Smith began to escalate the libel campaign after Oxebridge refused his demand to pay him $450,000. Oxebridge views this as nothing less than felony extortion. Worsening matters, a supporter of Elsmar — who himself is a convicted felon — had threatened to call an Oxebridge client with the intent of defaming us through that medium, as well. These two actions combined proved too much for us to bear.

*Who was this "convicted felon"? This is an outright lie.*
*Quite the exaggeration.*

Marc Smith has published tens of thousands of words on his site, Elsmar.com, defaming Oxebridge. Meanwhile, no one from Oxebridge has ever posted a single word on the Elsmar site, in that entire period. *Not one word.* In addition, we have never run a single article on Elsmar here on the Oxebridge site, despite Elsmar being central to certain investigations over CB collusion with consultants. We have consistently worked to keep Marc Smith and Elsmar at arm's length, in the hopes that he would end his libel campaign. It clearly did not work.

*He did, but eventually deleted it.*
*What investigation(s)? PARIS' paranoia?*

We understand the difference between defamation — which is illegal — and free speech and opinions, which are protected under the US Constitution. However, the posts made by Smith and his moderators breach the definition of free speech by being (a) false, (b) posted with malicious intent, and (c) intended to cause harm. *More totally FALSE statements.*

The combination of extortion and threats by a convicted felon against Oxebridge clients was too much. A cease and desist letter was sent to Smith, who responded — on his website — *by raising his demand to $5 million.*

*Prior to SELL Elsmar to PARIS - There was no "extortion".*

In the meantime, the actions have not been called into question by any of Elsmar's moderators, many of whom have actively participated in the defamation. Perhaps not coincidentally, these moderators are also auditors or sales representatives of major ISO 9001 certification bodies who resent the reporting done by Oxebridge. These individuals include Randall Daily of BSI, Jennifer Kirley of UL, Sidney Vianna of DNV, and Andy Nichols of NQA-USA. Meanwhile, all four of those CBs receive advertising space on the Elsmar site, raising questions as to whether BSI, UL, DNV and NQA have breached the ISO 17021 prohibition against promoting one consultant, while actively denigrating and defaming activities against a consultant that did not offer them such perks.

*None of these companies had advertised on Elsmar since around 2009.*

It is not our intent to shut down Elsmar, which has served the quality profession well in the past decade, despite the misbehavior of its owner. However, potential federal felonies cannot go unpunished, and Oxebridge intends to ensure that this stops. We have exhausted all means of working with Smith on this issue, and have finally had to resort to using the courts.

*It was PARIS' intent to gain control of Elsmar.com, but the result was SMITH would not SELL to PARIS for what he believed to be a reasonable price.*
*Best PARIS could do was file a CIVIL lawsuit.*
*SMITH agreed to do so, and did do - PARIS kept this published on his website and continued the lawsuit thus lying to the public about the situation for over 5 months.*

If Smith were instead to simply remove the offending materials and cease all such activity, the problem could be resolved quickly, and Elsmar users would be utterly unaffected. Based on his past 15 years' of behavior, we feel that is unlikely, however.

In the coming days and weeks, Smith will no doubt return to his safe haven, and post with increased frequency an unprecedented amount of new defaming material. We know this, and are ready to withstand it. Predicting this, we have already begun to push for an immediate temporary injunction. The new material will be added to the existing court complaint.

*More totally FALSE statements. A CIVIL lawsuit was filed by PARIS.*

We intend to push for a firm resolution to this problem, including the pursuit of criminal charges against Smith and his collaborators. We have likewise not ruled out actions against DNV, BSI, UL and NQA-USA for allowing their representatives to contribute to defamation and extortion.

— Christopher Paris

Thus, PARIS-OXEBRIDGE continually, publically, with malice published on

PARIS-OXEBRIDGE's own website, made clear that he had filed a lawsuit against SMITH. On the one hand, PARIS-OXEBRIDGE complains about SMITH posting the brief statement as cited on page 25 of the Report and Recommendation, PARIS-OXEBRIDGE himself revealed the intention of the lawsuit early on, starting in the Fall of 2014 so yes – there was no doubt whom SMITH was referring to.

8. SMITH believes that the words of the falsified Stipulation of Injunction are what matter, rather than the "spirit" of the document which is vastly open to interpretation/opinion. SMITH did not specifically mention PARIS or OXEBRIDGE in the comment on Linkedin, however SMITH does agree that people knew that the "person" was, in fact, Christopher Paris because Christopher Paris had been "banging the drum" publically, by publishing on his website, continuously for over 6 months starting in January 2015 that PARIS-OXEBRIDGE was suing SMITH. PARIS-OXEBRIDGE complains that everyone knew about the lawsuit, and he made sure everyone in the world knew starting in January 2015, not to mention in his "Tweets" of 2014. People all over the world were closely following what was occurring even before the lawsuit was actually filed on 5 January 2015, and PARIS-OXEBRIDGE made sure of it.

9. As noted on page 25 of the Report and Recommendation, SMITH did not refute or rebut that SMITH posted the sentence because SMITH believes that despite the false "agreement" submitted to the Court, SMITH was in compliance with 5(c) not having specifically named Christopher Paris and/or Oxebridge, and as has been shown time and again, SMITH has be honest and open with the Court in all aspects of this case. In response to the report's statement on page 25 that "…Notably, Defendant made no attempt to refute or rebut this allegation…". SMITH does not understand what is "notable" about it. SMITH had no reason to deny, rebut, refute or attempt to concoct a lie or a "story" about it.

**Specific Objection to "C" on page 29 of the Report and Recommendation**

10. We come back, again, to the "Google Groups" URLs from 2004. As SMITH has repeatedly said, this was addressed in the Mediation Settlement Agreement as evidenced by 1 – 2c). This was thoroughly discussed, including prior to the Mediation Settlement Agreement, and PARIS-OXEBRIDGE has still, well over a year later, not provided SMITH with the referenced letter.

11. Since this had already been addressed multiple times, SMITH is totally perplexed as to why this is still an issue. PARIS-OXEBRIDGE's attorney knows full well that it will require a court order to get that content removed. The question is, since it was considered resolved in the Mediation Settlement Agreement, why is it allowed to be brought up again and again? Why is SMITH being asked over and over why he has not attempted to have the 2004 Google Groups messages removed when the answer is the same: A court Order is necessary, and PARIS-OXEBRIDGE's attorney, in the Mediation Settlement agreement, said he would take care of it but wanted SMITH to sign some type of letter. SMITH believes the Court should take the Mediation Settlement Agreement as the answer and should not continue to ask an answered question. SMITH believes the Magistrate Judge should not include the complaint that the Google Groups URLs has not been taken down and saying SMITH should do something about it because it keeps coming back to the same answer - PARIS-OXEBRIDGE's attorney said he would take care of it in the Mediation Settlement Agreement meeting, and going so far as to include it in the text of the MSA. PARIS-OXEBRIDGE should not have included it in the complaint. SMITH believes that PARIS-OXEBRIDGE's attorney did so with malice aforethought in an attempt to confuse and deceive the court.

12. As to the Quality1Stop posts (SMITH made 2 posts), again in 2004 – That is a page which is obsolete but that the website owner has left up because there are discussions indexed in Google. SMITH has attached it here as Exhibit "A". The court should note that SMITH only responded to posts by Christopher Paris and one Jim Wade made in which Paris and Wade both defamed Elsmar.com and

Marc Smith. SMITH did nothing more than respond to the defamation by Damien, Paris and Wade.

13. PARIS-OXEBRIDGE has had over 12 years to complain but did nothing until the lawsuit. SMITH believes the Magistrate Judge erred in saying SMITH violated the Joint Stipulation on Injunction by not getting 2 posts in a discussion thread from 2004 removed. SMITH believes the Joint Stipulation on Injunction is not only fraudulent, but also that 5 (b) is vague and overly broad to begin with. SMITH also believes that there is a Statute of Limitations aspect to this, as well. It is surprising to SMITH that given PARIS-OXEBRIDGE has had over 12 years to complain but did nothing until the lawsuit, that this is allowed in this complaint at all.

14. Nor did SMITH defame PARIS-OXEBRIDGE in the Quality1Stop discussion thread. SMITH only *replied* to a defamation *started by "Damien", Christopher Paris and Jim Wade* about Elsmar.com and Marc Smith in which SMITH stated:

"If you're going to bash my site, and me personally, I figured I would respond. I just copied Jim's plea to me to be allowed back into the Cove forums after his deceit. Obviously he would not apologise, we haven't heard from him since and are quite happy now, thanks.

As for you, Chris, I believe your seminal thread is:
http://Elsmar.com/Forums/showthread.php?t=1815

People who live in glass houses shouldn't throw stones or something like that.

15. Smith does not believe this in any way "harms" PARIS-OXEBRIDGE.

16. This email was sent in a second attempt, the last being in April – May of 2015, to get the 2004 discussion thread removed:



Case 8:15-cv-00011-T-17TBM – Defendant's Response to Docket Document 99 – Report and Recommendations

The following response was received:



17. SMITH also telephoned the number given on the home page of the old Quality1stop.com (888 ISO-9000). There was an automated system which eventually asked me to leave a message, which I did. I have a recording of the call. My call has not been returned as of this writing. SMITH has included an audio CD of the call with this filing.

18. This confirms what SMITH found over a year ago when SMITH tried to contact them – Email contact is dead and phone calls are not returned.

19. Attached is a printout of the old discussion thread so that it is in evidence that Chris Paris and Jim Wade started the defamation. SMITH believes the Court should consider not only the age of the old discussion (over 10 years go), but the content as well. SMITH believes it is evident that this is nothing more than

PARIS-OXEBRIDGE being humiliated by what Christopher Paris wrote and is not subject to the falsified Stipulation on Injunction submitted by PARIS-OXEBRIDGE's attorney, as well as for other reasons stated herein such as Statute of Limitation issues. The history of the Jim Wade – Martin Greenaway – Damien alliance was that Jim Wade used "multiple personalities" to disrupt the Elsmar Cove forum and was subsequently banned, and again it must be noted that this was from 2004. See Exhibit "A", attached.

20. The history of this whole debacle – See Evidence Exhibit "B", attached. This history shows that PARIS-OXEBRIDGE has, over the years, other than SMITH's single discussion thread in 2001, started issues intended to goad SMITH into responses. As stated herein, even this lawsuit was started by PARIS-OXEBRIDGE posting negative things about SMITH and Elsmar.com on media such as "Twitter". SMITH did not start any of them. In addition, other than the 2004 Google Groups posts and the 2004 Quaity1stop post, SMITH had posted on NO other online forum or internet venue other than his response to PARIS-OXEBRIDGE's 2014 "Tweets". Even on Linkedin, SMITH had posted nothing until well after PARIS-OXEBRIDGE had posed inflammatory statements, not to mention publishing knowingly false, libelous information on his website (see 5 herein).

21. The history of the 15 year also shows that the claim by PARIS-OXEBRIDGE is a fabrication by PARIS-OXEBRIDGE as the "feud" was not continuous over that time period. It also shows that the flareups in 2004 and 2014 were instigated by PARIS-OXEBRIDGE, not by SMITH.

22. SMITH is not only enclosing an audio CD of his attempt to call Quality1stop, SMITH is also enclosing a video DVD which contains a number of "movies" SMITH took as evidence that SMITH had, in fact, taken timely action in complying with the SOI and MSA, most of which were done before and up to 6 July 2015. Additional efforts were also made after 6 June 2015. SMITH has throughout been attempting to comply to the falsified Stipulation on Injunction and the MSA, in a timely manner.

**Specific Objection to Sanctions on page 32 of the Report and Recommendation**

23. Between the obviously frivolous lawsuit and the frivolous complaint, SMITH has spent approximately US$40,000 already, much of it borrowed from family and friends. SMITH believes the entire complaint, especially considering that PARIS-OXEBRIDGE have consistently attempted to not only deceive the Court, but also have outright lied in their accusations (e.g.: It has essentially been proven that PARIS-OXEBRIDGE himself "hacked" his own website in an attempt to discredit and libel SMITH), that the Court should not only *not* sanction SMITH, but should consider sanctions against PARIS-OXEBRIDGE for attempts to deceive the Court, not to mention perjury by Christopher Paris.

24. Throughout, SMITH has had to respond to false accusations, was deceived by PARIS-OXEBRIDGE's attorney who filed a false Stipulation of Injunction with the Court yet is being held to comply with it. SMITH believes the Court should completely drop this complaint in its entirety.

**Specific Objection to Award of Attorney's Fees on page 33 of the Report and Recommendation**

25. As has already been shown herein, PARIS-OXEBRIDGE's attorney "blind sided" SMITH by not providing SMITH with a copy of additional evidence in a timely manner as required by the court. SMITH believes the Court should not have not allowed that evidence to be introduced. SMITH also believes that the Court should sanction PARIS-OXEBRIDGE's attorney for such despicable behavior rather than to award them with any attorney fees.

26. SMITH believes that PARIS-OXEBRIDGE should be required to pay SMITH all fees associated with responding to the complaint, including SMITH's time, travel expenses and all related expenses including having to respond to the Report and

Recommendation. By not doing so, SMITH believes the Court is allowing, if not promoting, knowingly frivolous filings.

27. SMITH has provided, herein, proof to the Plaintiffs as directed on page 33 of the Report and Recommendation.

28. SMITH also includes Exhibit "E" to show the court that SMITH has continuously actively tried to comply with the illegal Stipulation on Injunction.

## Hearing Transcript

29. Because the hearing transcript was not available to the public immediately after the hearing, SMITH could not submit a "marked up" transcript to contest aspects such as perjury by Christopher Paris. SMITH did submit comments in Court Docket Document 91. Attached herein is the "marked up" transcript (evidence exhibit "D").

30. As stated in Court Docket Document 91, SMITH believes that during the hearing Christopher Paris perjured himself a number of times knowingly, willfully and with malice. SMITH believes that the Court should not have made a Report and Recommendation prior to investigation of whether Christopher Paris did, in fact, perjure himself.

31. SMITH claims his First Amendment rights to submit the marked up transcript to the Court. In addition, because this is a public civil lawsuit and complaint, SMITH believes the Stipulation on Injunction does not apply as "posting new material" as that would inhibit SMITH from making a solid defense in a public legal filing. It is being submitted as evidence, including defining several specific places where SMITH believes PARIS-OXEBRIDGE committed perjury during the hearing by way of direct annotation of the transcript. While SMITH understands PARIS-OXEBRIDGE will see this as embarrassing and complain, embarrassment is not a justification to restrict SMITH from defending himself.

WHEREFORE, SMITH hereby requests that this Honorable Court:

A. Dismiss in whole PARIS-OXEBRIDGE's Court Docket Document 59.

B. Withdraw or otherwise negate Court Document 99 until such time as the Court can ascertain the validity/legality of the Stipulation on Injunction which SMITH states he believes is invalid/illegal for reasons stated herein and the applicable referenced Court documents.

C. Withdraw or otherwise negate Court Document 99 until such time as it is determined whether in fact Christopher Paris did commit perjury during the hearing.

I declare under penalty of perjury that the forgoing is true and correct.

Dated and respectfully submitted using UPS this 4th day of August 2016.

Marc Timothy Smith (SMITH pro se)

By: 〇Marc Smith

8466 Lesourdsville-West Chester Road

West Chester, Ohio 45069-1929

Tel: 513 720-0600

Email: marcsmith102@cinci.rr.com

I certify that a copy of this document is being furnished on the same date to the court and to William R. Wohlsifer, Attorney for PARIS at:

William R. Wohlsifer

1100 E. Park Ave Ste B

Tallahassee, Florida 32301

(Attorney for PARIS)

Marc Timothy Smith (SMITH pro se)