**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

IN THE UNITED STATES DISTRIC COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION


In response to Plaintiffs' Motion (Document 146) of Case number: 8:15-cv-11-T-60CPT, formerly : 8:15-cv-00011


OXEBRIDGE QUALITY RESOURCES

INTERNATIONAL, LLC, and

CHRISTOPHER PARIS, individually.


Plaintiffs,


Vs.


MARC TIMOTHY SMITH, individually,

and d/b/a/ CAYMAN BUSINESS SYSTEMS *(Defunct since ~2001)*


Defendants.

---

Presiding Judge: Thomas P. Barber

Court: Florida Middle District Court

Office: Tampa Office

County: Hillsborough

---

Case Number: 8:15-cv-11-T-60CPT, formerly: 8:15-cv-00011

---

<u>Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case</u>
<u>8:15-cv-00011</u>

# AMENDED ANSWER

Defendant Smith seeks to amend its answer to Plaintiff's motion (Document 146-1),
as well as evidence of Smith's defense.

## BACKGROUND AND FACTS

A: This is the third lawyer to file a motion regarding violation of the injunction going
back to May/June 2015.

B: The Plaintiff, Mr. Christopher Paris, is filing this as a way to continue to further
harass Marc Smith, the Defendant.

C: The most recent attempt was to file a "new" lawsuit against 4 defendants. This
lawsuit included the same lawsuit, practically verbatim, filed in 2015 and the violation
of  injunction complaint(s) filed in 2015 and 2016. Case:  *M.D.Fla._8_19-cv-00423-*
*WFJ-SPF – "CHRISTOPHER MARK PARIS, and OXEBRIDGE QUALITY*
*RESOURCES INTERNATIONAL, LLC*

*Plaintiffs v.*

*WILLIAM LEVINSON, LEVINSON PRODUCTIVITY SYSTEM, PC, a*
*Pennsylvania Corporation, MARC TIMOTHY SMITH, individually, and*
*d/b/a CAYMAN BUSINESS SYSTEMS, GUBERMAN PMC, a*
*Connecticut Corporation, DARYL GUBERMAN, an Individual, DONALD LABELLE,*
*an Individual*.

In this new complaint it is evident that Paris' most recent attorney, Mr. Glenn Shrayer
(Fl Bar No. 57253) failed to do *due diligence* in that a simple PACER search would
have revealed that, while "chopped up" with parts interspersed within the new
lawsuit, was nearly identical to the 2015 case which had been closed "with
prejudice" in July of 2015 (docket entry 53) by a settlement Agreement and as such
could not be brought again. It is obvious that Paris supplied the text of the original
lawsuit to Mr Shrayer  which, Mr. Shrayer took and, with various minor revisions, and
produced into a wide lawsuit against multiple defendants. E.g.:

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case
8:15-cv-00011**

From the 2015 lawsuit.

12. SMITH owns, operates and maintains Elsmar.com, which offers a free alternative to standards consulting services to potential paying clients, of which SMITH derives income.

13. Many Florida businesses and individuals have requested and received assistance for industry standards in place of normally paid consulting services from Elsmar.com for example;

    a. Precision Resource – Florida Division, Inc. (Fort Lauderdale, FL)

    b. Mike Laurie – Quality Manager, Injection molding of aerospace and medical components (Sarasota, FL)

    c. Sun-Glo Plating Company, Inc. (Pinellas Park, FL)

    d. Giselle – Quality Manager, Automotive and Manufacturing Industry

    e. Virtual Imaging, Inc. (Boca Raton, FL)

    f. Gooch & Housego (Orlando, FL)

14. Elsmar.com is not a passive website nor is it merely interactive, because it requires original input each and every time Elsmar.com and the requesting party engage in industry-specific consultation. Further, "premium file access" can be purchased where editable Master Data File Sets are transmitted to "premium members", some of which in the State of Florida.

15. SMITH and CAYMAN's clients within the State of Florida use Elsmar.com to access training manuals and materials essential to Defendants' services.

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

36.     Smith owns, operates and maintains Elsmar.com, which offers a forum board service directed at the quality assurance profession, and which sells advertising space, of which Smith derives income.

**This is from the 2019 lawsuit, taken word for word from the Closed With Prejudice 2015 lawsuit.**

37.     Many Florida businesses and individuals have requested and received assistance for industry standards in place of normally paid consulting services from Elsmar.com for example:

      i.   Precision Resource – Florida Division, Inc. (Fort Lauderdale, FL)

      ii.  Mike Laurie – Quality Manager, Injection molding of aerospace and medical components (Sarasota, FL)

      iii. Sun-Glo Plating Company, Inc. (Pinellas Park, FL)

      iv.  Giselle – Quality Manager, Automotive and Manufacturing Industry

      v.   Virtual Imaging, Inc. (Boca Raton, FL)

      vi.  Gooch & Housego (Orlando, FL)

38.     Elsmar.com is not a passive website nor is it merely interactive, because it requires original input each and every time Elsmar.com and the requesting party engage in industry-specific consultation. Further, "premium file access" can be purchased where editable Master Data File

Case 8:15-cv-00423-W0423SP5 Document 25-1 Filed 04/18/18 Page 7 of 65 PageID 60

Sets are transmitted to "premium members", some of which in the State of Florida.

39.     SMITH and CAYMAN's clients within the State of Florida use Elsmar.com to access

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case
8:15-cv-00011**

D: Interweaved with in the "new" lawsuit were many elements/text of the 2016 and
2017 violation of injunction elements/claims as well as most of the text from the 2015
lawsuit against Smith.

E: In the 2019 lawsuit Mr. Shrayer did not submit to the court the Notice of Pendency
of Other Actions as required by Local Rule 1.04(d), so SMITH did submit the
required document to the court (8:19-cv-423, docket document 15, April 19, 2019) in
the belief that it was important for the court to know about this lawsuit. Soon
afterward Mr. Shrayer dropped SMITH from the lawsuit. On May 10 of 2019, Mr.
Shrayer did submit to that court a voluntary dismissal of Smith from the case (8:19-
cv-423, docket document 36, May 10, 2019) which the court granted soon after.

F: During the time of the injunction, Paris continued to violate the injunction through
2017, 2018 and 2019. Rather than burdening this court with repeated exhibits, Smith
requests this court review docket documents 122 and 123, including associated
exhibits. This is in addition to continued posting by Paris on Linkedin and on his
personal website, and probably other interne venues.

G: In 8:19-cv-423, Levinson and Paris did settle out of court. While Smith has no
knowledge of the settlement content, soon after Mr. Paris deleted over 1,100 of his
approximately 1,500 "tweets". Smith does not know what other documents Pairs
deleted on his website or other venues, but it appears obvious that these deletions
were in response to the settlement with Levinson and/or in preparation to filing this
new violation of injunction complaint to in an attempt to eliminate evidence of his
continuing violations of the  injunction.

H: Throughout his current complaint, Paris claims throughout that Smith is
associated with Osteinfo.com, Oxebridgequalitylawsuits.com and Oxebridge.co. No
actual, verifiable proof/evidence has been presented. All assertions are opinions and
conjecture rather than clear and convincing evidence of Smith's involvement with
these websites. As 8:19-cv-423 shows, Mr. Paris has made numerous enemies, any
one or more of which could be responsible for the cited websites, as could Paris
himself.

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case**</u>
<u>**8:15-cv-00011**</u>

I: As Smith has shown, since before, and after, the March 2016 violation of injunction hearing, Paris himself has continuously violated the injunction.

J: Assuming the Court does not reject the Plaintiff's motion, Smith requests an in-person hearing in Tampa on this complaint and respectfully requests a hearing date in late April 2020 due to the distance and potential winter weather prior to April.

ANSWERS TO **MOTION FOR SHOW CAUSE ORDER**

I

ADMISSIONS AND DENIALS TO EACH MOTION LINE ITEM (DOCUMENT 146-1)

# Defamation Requirements

*Any intentional **false** communication, either written or spoken, that harms a person's reputation; decreases the respect, regard, or confidence in which a person is held; or induces disparaging, hostile, or disagreeable opinions or feelings against a person.*

Line Item 1 – Agree – The original case was closed settled by a settlement agreement prior to a trial on 5 June 2015 and closed **with prejudice** in July 2015 (Docket Entry 53) by the court. A "fact" already well known by this court.

Line Item 2 – Without knowledge, therefore denied. Oxbridge now claims to be a "News Website" and is no longer claims to provide quality management "standards" or services to my knowledge.

Line Item 3 – Without knowledge - Unrelated to claims in line item 2. No clear and convincing evidence of this is presented.

Line Item 4 – Without knowledge. Smith does not visit Paris' website, and it appears few others do:

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**</u>



These days, practically anyone can claim their website is a "news" outlet. Thousands of websites make the same claim these days.

Line Item 5 – Without knowledge – Smith has no idea when Paris started his website. This is a repetitious restatement from the original lawsuit.

Line Item 6 – Agree in part/Deny in part – Prior to 2001 and as such has not been a "competitor" in any way since 2001, over 19 years ago.  This is a repetitious restatement from the original lawsuit as are most of these line items (cut and paste).

Line Item 7 – Deny – Elsmar has never used a picture of a Cayman Islands property on Elsmar.com. This is a demonstratively false accusation. Elsmar has never done so, and it is irrelevant to this complaint.

Line Item 8 – Agree – By USENET rules at the time, Paris was technically "spamming' a newsgroup, the content of which was arguably fraudulent which was

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**</u>

expressed as opinion, not fact. As so much that is presented in this complaint, no clear and convincing evidence otherwise is presented in this complaint.

Line Item 9 – Agree in part/Deny in part – Smith has no knowledge of Google having purchased all of the USENET groups. Google did purchase Dejavue in 2001 which was a small part of USENET groups at the time. The USENET groups had, and has, no copyright restrictions on text groups or their content, nor does Google Groups have such restrictions or claims. Google Groups "scraped" much USENET groups content and posted them on their "Groups" platform since USENET claimed, and still claims, no copyright to group text comments/posts/content.

Line Item 10 – Agree In Part/Deny In Part – Smith has little memory of what occurred almost 20 years ago. In addition, Paris had over 15 years, at the time of this 2015 lawsuit, to complain, way beyond the statute of limitations. Smith admits at he time, he owned and operated Elsmar.com, which *at the time* was a significant internet resource. That was over 15 years ago from the filing of the 2015 lawsuit – again, a statue of limitations "problem" for filing the lawsuit in the first place. It should also be noted that the court, in the March 2016 hearing in Tampa ruled that only aspects relating to a violation of the injunction are relevant to the violation of injunction complaint. No other aspect of the lawsuit, which was closed **with prejudice** in July 2015, is relevant. None of this is relevant to this current complaint. Smith Denies that any significant amount of content of any USENET group was cross posted on the Elsmar.com website.

Line Item 11 – Deny – It is knowingly false for Paris to claim that any Oxebridge commentary or other Oxebridge related discussions or comments have been on Elsmar.com since circa March 2015.  No clear and convincing evidence otherwise is presented. Nor is there any clear and convincing evidence presented that any exists, or has existed since circa March 2015.

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

These were ll deleted during March 2915, including many which were complementary and/or recommendations which were positive (pro-Oxebridge)

| | Thread # | Start Date | End Date | Total Posts | Discussion Thread Title | Paris related Post Number(s) | Comments |
|---|---|---|---|---|---|---|---|
| 1. | 1815 | 7/1/2001 | 9/3/2001 | 33 | Oxebridge NG SPAM - Chris Paris - The 40 Day 'Wonder' Implementation - A Scam or not? | All | Initial Confrontation. |
| 2. | 7465 | 9/16/2001 | 10/18/2004 | 12 | Copyright Material vs. File Sharing - Title 17 U.S.C. Section 107 | 11 | Do not link to, or copy from, Paris' website. Edited out. |
| 3. | 8476 | 5/4/2004 | 10/21/2004 | 34 | Article Submission Rules and Guidelines - The FINE PRINT | 1 | Chris Paris files complaint with the Ohio Attorney. Edited out. |
| 4. | 8641 | 6/1/2004 | 6/24/2004 | 13 | May 2004 Articles Poll (Vote) Thread | 10 | General over "Visitor Articles" calling it a "Lottery" Edited out. |
| 5. | 8674 | 6/4/2004 | 6/8/2004 | 7 | Spreading FUD? IAAR Considers Imposing RAB Requirements on Internal Auditors | 3 | and states Marc Smith is "...promoting terrorism..." |
| 6. | 8692 | 6/8/2004 | 10/22/2004 | 37 | Chris Paris of Oxebridge - Waging a Personal War | All | |
| 7. | 8853 | 6/10/2004 | 6/10/2004 | 1 | Special Concession to Chris Paris of Oxebridge | Single Post | Invitation to Paris to post. |
| 8. | 9029 | 7/15/2004 | 8/16/2004 | 148 | ASQ Forum Software and General Discussion about the American Society for Quality | 146 | Post soft delete. |
| 9. | 10285 | 12/3/2004 | 12/8/2004 | 26 | Has Anyone Been "Outed" and Got in Trouble Over Comments Made in Their Posts? | 3 | Edited out. |
| 10. | 14749 | 1/3/2006 | 11/18/2004 | 374 | The Next version of ISO 9001 (2008 version) - Any news? | 306, 307, 310, | Edited out. |
| 11. | 16389 | 5/3/2006 | 5/4/2006 | 5 | Should Quality Policy be marketing oriented? Contracting firm for aerospace software | 5 | Edited out. |
| 12. | 34361 | 5/27/2009 | 5/31/2009 | 81 | Is it possible to get ISO 9001 certification in 90 days? | 9 | Edited out. |
| 13. | 44792 | 11/19/2010 | 11/20/2010 | 6 | Getting Paid to Appeal Non-Conformities | 1, 2, 5 | BOD forum and edited. |
| 14. | 46840 | 3/10/2011 | 3/12/2011 | 8 | Increasing the sense of participation - Membership! | 2 | BOD Forum |
| 15. | 64860 | 8/6/2014 | 9/24/2014 | 9 | Who can perform ISO 9001:2008 Internal Audit prior to our Registration Audit? | NONE | TBD |
| 16. | 65636 | 10/20/2014 | 1/30/2015 | 79 | Chris Paris of Oxebridge - At it again - October - December 2014 and January 2015 | All | BOF forum. |
| 17. | 66511 | 10/20/14 | 1/26/2015 | 4 | Chris Paris of Oxebridge - At it again - January 2015 Status (LAWSUIT) | ALL | Lawsuit posted with a Twitter capture. BOD forum. |
| | | 3/12/2015 | | | Total Threads: 57,416 | NOTE: Many posts in which Oxebridge was mentioned were complementary. | |
| | | | | | Total Posts: 549,817 | Elsmr did not discriminate against Oxebridge. | |

Line Item 12 – Deny – Also see Docket Documents 105, 122, 123 (including exhibits), 129, 130, 133, 135, 136, 137 in which Paris begs for "discovery" after the case was settled, and was denied (docket document 138), 140 (including exhibits), 141, 144, and document 145.

During the time that Smith is/was/has been supposedly violating the injunction, Paris was also violating the injunction concurrently, and currently still has content on his Oxebridge website in which he knowingly falsely accuses Smith of violating the injunction, although Paris appears to have ceased his defamation of Elsmar/Smith on Twitter and Linkedin since his settlement with Levinson in the 2019 lawsuit.

Line Item 13 – Deny – Defendant believes Plaintiffs' Motion to Strike Answer is inappropriate, however, as stated in Line Item 1 herein, Defendant agrees to Amend Defendants' Answer to address complaints Plaintiff asserts even though Defendant believes Plaintiffs' intent is to further burden the court with more paperwork and to punish Smith by use of frivolous, redundant claims to cause Smith to take time to respond. Smith has no involvement or complicity with others as alleged.

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

Line Item 14 – Agree – The court did enter that order, yet as Smith has, and does, maintain, Mr. Wholsifer submitted to the court a document which was not the one agreed to prior to its submission. As an officer of the out, this was fraud upon the court. A witness, Ms. Tracey Ann Pratt, listened to the telephone conversation between Mr. Wohlsifer and Smith, and can be called as a witness to attest that Mr. Wohlsifer agreed to add the exact "terms and conditions" for Paris as were stated for Smith, yet he did not and as such submitted to the court a fraudulent document. The entire stipulation submitted to the court by Mr. Wohlsifer was fraudulent.

Line Item 15 – Agree – However define "symbolic". It should also be noted that claimed attorney fees of approximately $12,000 was submitted which was reduced by the court to approximately $4,750 (docket documents 99, 105, 110, 120 and 121). Paris was wanting to ask for US$200,000 as shown in as shown in the billing records Mr. Wohlsifer submitted to the court in his listing of charges to Paris.

Line Item 16 – Deny – The proper venue for trademark disputes is not this court, much less in this violation of injunction complaint. In fact, as shown, in part, in attachment 1 to this amended answer, Paris himself has been, until recently, regularly violating the injunction.

Line Item 17 – Deny – There is no actual **proof** to support this claim. Paris does not provide clear and convincing evidence. In addition, there is a process to complain about trademark disputes. This complaint is about a supposed violation of injunction, not trademark disputes.

Line Item 18 – Deny – Smith has no association with the owner of the cited email address other than occasional communications with the current website owner with regard to server software maintenance. Paris has provided no clear and convincing evidence of his claim, rather Paris provides only his opinion/conjecture. Peachfarm LLC agreed to take over ownership of the Elsmar.com domain name and website.

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

Peachfarm LLC owns hundreds of websites and is based in Bermuda. In order to protect them from people such as Paris and their frivolous lawsuits in the US.


Line  Item 19 – Deny – Paris has appropriate venues to address trademark claims. The complaint is about claimed violation of an injunction, not trademark issues. Trademark issues have nothing to do with a violation the injunction-A "Throw s*it against the wall" addition to this complaint. To claim a trademark dispute, a new, specific lawsuit is required.


Line Item 20 – Agree in part/deny in part – Technical issues related to the server and software are sent to the website owner who communicates them to Smith when appropriate to attempt to resolve.


Line Item 21 – Deny. Conjecture on Paris' part. No clear and convincing evidence of this is presented.


Line Item 22 – Deny - It is not unusual for the website owner to request that Smith resolve a problem like this. Smith does not remember this, but it was a response in the forum in 2016, not from an email address, and it advises the person to contact the current website owner, Mr. Peachfarm at the company email address.


Line Item 23 – Agree in part. Deny in part - The elsmarmarc@gmail email address is controlled by the current website owner who does forward emails to Smith when appropriate, and vice versa, but not always. It depends upon the subject matter. But again, this is an issue of the settlement agreement, not the accusation of violation of the injunction. elsmarmarc@gmail.com in court documents are left over from the time of the lawsuit and can not been removed from PACER by Smith.


Line Item 24 – Agree in part/Deny in part - These are old documents. Smith has used "elsmamarc" in many places over the last approximately 20 years. A "Google

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case**</u>
<u>**8:15-cv-00011**</u>

search" for the term is of dubious value with regard to anything herein. Although
Smith does still have the elsmarmarc@gmail address in many website and
discussion forums records, control of that email address was ceded to the current
website owner a couple of years ago for continuity of/in the forum.

Line Item 25 – Deny – As with so many things Paris has claimed, he has made
assumptions. Paris has provided no clear and convincing evidence. For example,
see Docket Document 122-1 (an exhibit). Paris makes many spurious, knowingly
false claims such as Exhibits "E" and "G" and "K".

Line Item 26 –Deny - False – No clear and convincing evidence of this is presented.
What IS presented is a "Whois" record from a date when Elsmar.com was off-line
and prior to transfer to the current owner in April 2016, which was not in conflict with
the settlement agreement. There is no "defamatory" information in Exhibit 12.

Line Item 27 – Deny – No clear and convincing evidence of any involvement of
Smith is presented. This is total conjecture.

Line Item 28 – Without knowledge. Smith has not "watched" or otherwise
"investigated" the cited website.

Line Item 29 – Deny/Without knowledge – No evidence of any involvement of Smith
with osteinfo.com and/or Oxebridge.co has been presented. Smith has not
"watched" or otherwise "investigated" the cited website.

Line Item 30 – Deny/Without knowledge - wikiwww.me is not an *authoritative* source
and it is years out of date. In addition, Smith has not "watched" or otherwise
"investigated" the cited website.

Line Item 31 – Without knowledge – Smith has no knowledge of content of these
websites. In addition, Smith has not "watched" or otherwise "investigated" the cited

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

website(s). Nor has any clear and convincing evidence presented otherwise been presented, much less any evidence of defamatory content been presented. Conjecture is not evidence.

Line Item 32 –Deny – There is no clear and convincing evidence presented as to the actual ownership of the websites cited. Conjecture is not evidence.

Line Item 33 - Without knowledge. Smith has not "watched" or otherwise "investigated" the cited website.

Line Item 34 - Without knowledge. . Smith has not "watched" or otherwise "investigated" the cited website.

Line Item 35 - Agree in part/Deny in part - Smith was copied on Paris' threat by the Elsmar.com owner who may have shared it with many people. In addition, exhibit 15 has no "page 2". Paris' mistake of sending it to the wrong email address shows Paris did not even know for sure who he was sending a cease and desist letter to.

Line Item 36 – Deny - Paris sent this to the website owner who chose to publish without coordination with or approval of Smith. This is not clear and convincing evidence of collusion.

Line Item 37 – Deny - Opinion statement. No clear and convincing evidence is presented.

Line Item 38 – Deny – Smith has no control over what others post on their website. Smith never was contacted about any such interview nor did Smith give such an interview, nor has such an interview been published..

Line Item 39 – Deny - The website owner clearly expressed an opinion. "Obviously agreed to by Smith because of COSTS," is a reason why most lawsuits are settled out of court, as this one was, prior to trial which is a quite well known tactic to financially damage a defendant – winning is not necessarily the object of a lawsuit of this type. In addition, Paris has, on Twitter, on his Oxebridge website, and elsewhere, claimed he had "won" a lawsuit against Elsmar. E.g.;

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

US Court: **Oxebridge** Prevails in **Elsmar Lawsuit**. The US Federal District Court Middle District has issued a final order declaring **Oxebridge** as the prevailing party in its defamation **lawsuit** against the **Elsmar** website.  Jan 20, 2017

US Court: Oxebridge Prevails in Elsmar Lawsuit - Oxebridge ...

https://www.oxebridge.com › emma › us-court-oxebridge-prevails-in-elsmar...

No lawsuit has ever been filed against Elsmar, Elsmar.com the website or otherwise, yet Paris continues to make that claim on his Oxebridge website and elsewhere.

Line Item 40 – Deny – The Exhibit 15 was, it appears, marked up by Paris and contains only 1 page. There is no way to determine if Paris actually produced that page himself.

Line Item 41 – Statute of limitations has long run out on complaining about content from 2000 – approximately 20 years ago. It is the crux of this lawsuit to begin with and it is surprising it was not thrown out at the beginning considering: **Two Years is the Standard Deadline for Filing a Defamation Lawsuit in Florida.** Paris waited approximately 15 years before filing the lawsuit.

Line Item 42 – Deny – Totally. This is total BS. No clear and convincing evidence is presented. Not to mention, Paris himself has concurrently published defamatory posts about Smith on his Oxebridge website and elsewhere.

Line Item 43 – Deny – Read the settlement agreement. Smith did not promise or agree to sell Elsmar nor did Smith agree not to participate in discussions should ownership be transferred. Or sold. The agreement allowed Smith to retain total ownership, without any restrictions on what he would do with it. In addition, Paris has included "evidence" that are "legacy" pages which have never, to today, been removed from the server.  Smith is proud of his past and there is no reason to remove legacy pages from approximately 20 years ago.  The settlement agreement only stipulated that Smith could not open another "ISO" website. In addition, in March 2016 in the Tampa hearing, it was determined that anything related to the mediation settlement agreement was not germane to the violation of injunction complaint.

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case
8:15-cv-00011**</u>

Line Item 44 - Agree in part/Deny in part – Smith has duties to maintain software
security and monitors content. Smith also makes occasional posts and ensures thee
is no mention of Chris Paris and/or Oxebridge. There is no prohibition against such
in any document.

Line Item 45 – Agree in part/Deny in part – What is the point of this line item which
has absolutely no relationship to this complaint? There are some links to the Duck
search engine, but is not a part of an "internal" search engine.

Line Item 46 – Agree – Most search engines do the same. Smith has absolutely no
control over how any search engine categorizes and lists search results. It should
also be noted that SMITH has no control over DUCK search content, including
"snippets. Clicking on links in the search results show that no content related to
Oxebridge is on the Elsmar website.  Paris may want to complain to DuckDuckGo
about their search results algorithm. Smith has no idea when Paris did the DUCK
search, but Smith has reviewed every link and not one has anything related to
Oxebridge in on any link. How DUCK formulates search results is their algorithm
which Smith has no control over. Smith favors DUCK searches because they do not
include advertising as Google does, and it uses SSL which provides privacy, does
no user tracking and provides security. Elsmar.com has NO content such as "Note
that Christopher Paris of Oxebridge continues to keep truly "Fake News" and Smith
has no idea where the DUCK got that "snippet". It is nowhere on the Elsmar.com
website and does not appear in Google or Bing searches.

Line item 47 – No knowledge.  In addition:

# libel

1) n. to publish in print (including pictures), writing or broadcast through radio, television or
film, an **untruth**

Paris'statement that "…While the Plaintiffs' do not need to prove defamation here …" is
false. Libel and defamation carry the same requirement – If a statement is not false it
is not defamatory nor is it libelous.

Line Item 48 – Deny – Smith has no control over the cited website. In addition,

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**</u>

website owners are allowed to post opinions. Paris has provided no examples of content, other than some opinions, of which he himself, has expressed many on many venues from Twitter to Linkedin to on his own Oxebridge website.  It's what he does. E.g.:





Line Item 49 – Deny – This is all rehashed bog from previous complaints. This a knowingly false accusation. Paris also knows that Smith can not get Goggle to delete Google Groups page(s).

Line Item 50 – Deny – Smith has no control over the website or its content.  In addition, if Paris has copyright complaint(s), there are appropriate venues to state and resolve copyright complaints.

Line Item 51- Deny – Smith has no control over the referenced website. In addition, if Paris has copyright complaints, there appropriate venues to state and resolve such complaints.

Line Item 52 – Agree – Had Paris filed a complaint any offending material would have been removed. Paris can use the Report function as can anyone, even unregistered visitors. Anyone can and it is available to the public. This is standard

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**</u>

procedure on the majority of websites.

Line Item 53 - Agree – The post contained an imbedded graphic which was not viewable by the public, or Paris, so Paris is guessing that it was something nefarious. Nothing prohibits people from having private conversations and there is no evidence that was or is in any way nefarious. In addition, when it became apparent (by way of Paris' Twitter" tweets) it was immediately removed.

Line Item 54 – Agree in part/Deny in part – The exhibit speaks for its self. It is  an email sent from [elsmarmarc@icloud.com](mailto:elsmarmarc@icloud.com).

Line Item 55 – Agree in part/Deny in part – Paris threatened Smith, it was public knowledge. The website owner was one of many that knew, in part because Paris sent the email to an old email address.

Line Item 56 – Deny – This is all conjecture. Conjecture is not clear convincing evidence. It is certainly not "clear and convincing" evidence, nor is it "proof" of anything.


Response to:
# I. ARGUMENT & AUTHORITIES

A:  No precise "facts" have presented. Rather, this filing is totally conjecture.

B: Smith believes only a court hearing can substantiate whether the injunction, and whether Paris himself is also violating the injunction.

C: As the complaint states: "…truth of the allegations sought to be established, evidence so clear, direct, weighty and convincing as to enable fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1995) which can only be done in a court hearing.

D: While the accusation of false accusations and defamation, are heavily used throughout the complaint, Paris has submitted no "false" material, nor any actual

<u>**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**</u>

defamation. Note that: A defamatory statement must be false -- otherwise it's not considered damaging. Even terribly mean or disparaging things are not defamatory if the shoe fits. Most opinions don't count as defamation because they can't be proved to be objectively false. For instance, when a reviewer says, "That was the worst book I've read all year," she's not defaming the author, because the statement can't be proven to be false. Paris has not cited any actual false statement(s) or information which by clear and convincing evidence has been posted anywhere by Smith, or anyone else for that matter. Obviously Paris is not happy that many people have used their first amendment right to mock him, people have the right to do so.

<u>**REQUEST FOR RELIEF**</u>

Wherefore, Defendant prays for as follows:

1.  For dismissal of the Plaintiff's Motion with prejudice;
2.  For an order that the Plaintiff shall take no relief from the Motion;
3.  For Plaintiff to pay all costs of the Complaint/Lawsuit and his motion(s) incurred by Defendant having to respond to a frivolous, non-specific, redundant complaint;
4.  For further relief the Court deems fair.

I declare under penalty of perjury that the forgoing is true and correct.
Dated and respectfully submitted using the CM/ECF this 2 January 2020.

Marc Timothy Smith (Defendant pro se)

By:

/s/Marc Timothy Smith

**Defendant Pro Se's Amended Answer to Plaintiff's Motion Document 146 - Case 8:15-cv-00011**

I certify that a copy of this ANSWER and REQUEST FOR RELIEF is being furnished by mail on the same date to the Court and to Attorney for Plaintiff.